UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DEBORAH INTORCIA,

     Plaintiff,

      v.

THE CITY OF NEW YORK; Officer RYAN T. STAM;
Sergeant MARY K. GILLESPIE; Officer LOUIS J.
CAMPANELLA; Assistant District Attorney REBECCA
JEROME; and DOES #1-10, in their individual
and official capacities,

     Defendants.

Case No.: _____

**COMPLAINT AND JURY
DEMAND**

---

   Plaintiff DEBORAH INTORCIA, by her attorneys, LAW OFFICES OF JAMES

HENNING & ASSOCIATES, PLLC, respectfully alleges, upon information and belief, as

follows:

## INTRODUCTION

1) On Monday July 17, 2023, Deborah Intorcia, a 55-year-old mother with no criminal history,

  was unlawfully arrested and confined because she politely asked her neighbors to cease

  disruptive construction that continued non-stop throughout the day and into the evening.

2) Upon information and belief, Deborah's unlawful arrest, ensuing confinement, and

  humiliating searches perpetrated upon her while she was in police custody were affected

  because her neighbors are friends with police employees who they contacted to exact

  retribution upon her.

3) To that end, while in police custody on baseless allegations, Deborah was denied food and

  water and subjected to a degrading and painful cavity search.

1

4) Unsurprisingly, the baseless charges against Deborah were dismissed, but only after the People attempted to have her plead guilty, without receiving discovery, to avoid liability and exposure of the official misconduct underlying her wrongful arrest and confinement, unconstitutional searches, and malicious prosecution.

5) Deborah Intorcia brings the present action to seek monetary compensation for the damages she suffered, exemplary and punitive damages to deter similar misconduct from being committed by the City's law enforcement officials in the future, and accountability for the gross misconduct underlying her wrongful arrest and malicious prosecution.

## JURISDICTION AND VENUE

6) This action arises under 42 U.S.C. §§ 1983 and 1988.

7) This Court may exercise supplemental jurisdiction over the State law causes of action herein.

8) Venue is proper under 28 U.S.C. § 1391.

9) On or about September 8, 2023, Plaintiff served the City of New York timely notice of the present claims, in accordance with N.Y. Gen. Mun. Law § 50-e. A hearing pursuant to N.Y. Gen. Mun. Law § 50-h was held on November 17, 2023.

10) More than 90 days have elapsed since submission of Plaintiff's notice of claim and her 50-h hearing and Defendant City has not settled the instant claim.

11) Plaintiff has duly complied with all the conditions precedent to the commencement of this action.

## THE PARTIES

12) Plaintiff, DEBORAH INTORCIA, is a resident of the State of New York and of the United States, and resides in STATEN ISLAND, New York.

13) Defendant, CITY OF NEW YORK, is a municipal corporation in the State of New York and a resident of the Eastern District of New York. Richmond County is a subdivision of the City.

14) Defendant, OFFICER RYAN T. STAM (Shield No.: 30923), was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

15) Defendant, OFFICER LOUIS J. CAMPANELLA (Shield No.: 190), was at all relevant times an officer employed by the NYPD, acting within the scope of her authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

16) Defendant, SERGEANT MARY K. GILLESPIE (Shield No.: 30923), was at all relevant times a Sergeant employed by the NYPD, acting within the scope of her authority and under color of State law, unless otherwise specified. She is named in her individual and official capacities.

17) Defendant, REBECCA JEROME, was at all relevant times an Assistant District Attorney ("ADA") employed by the Richmond County District Attorney's Office ("RCDAO"), acting within the scope of her authority and under color of State law, unless otherwise specified. She is named in her individual and official capacities.

18) Defendants, DOE OFFICERS AND ADAs #1-10, whose actual names Plaintiff has been unable to ascertain despite reasonable efforts to do so but who are sued herein by the fictitious designation of "Doe," represent those officers and ADAs employed by the City and acting under color of law and in their individual and official capacities, unless otherwise specified.

19) The NYPD is an agency of the City.

20) Employees of the NYPD are agents and employees of the City.

21) The City is legally responsible for torts that NYPD employees commit within the scope of their employment or under color of law.

22) The RCDAO is an agency of the City.

23) The District Attorney and other employees of the RCDAO are agents and employees of the City.

24) The City is legally responsible for torts that employees of the RCDAO commit within the scope of their employment and/or under color of law.

## STATEMENT OF FACTS

25) Plaintiff is a 55-year-old mother of one. She holds a master's degree and is gainfully employed.

26) For twenty-two years, Plaintiff and her husband have resided at 222 Leverett Avenue in Staten Island, New York, where they raised their child and enjoyed cordial relationships with neighbors.

27) Upon information and belief, in or around April 2023, Alysa Andrade and her husband James Yap, an emergency medical technician ("EMT") with the New York City Fire Department ("FDNY"), purchased the house at 87 Stieg Avenue, which neighbors the property where Plaintiff and her family have resided for over two decades.

28) Before July 17, 2023, Plaintiff had never been arrested.

29) On July 17, 2023, Andrade and Yap were having construction done on the premises at 87 Stieg Avenue. Upon further information and belief, the work was being performed unlawfully.

30) The construction work began in the morning and woke Plaintiff at approximately 8 AM. It involved the use of hammers and power tools and was loud enough that it rattled the walls inside of Plaintiff's home. The noise droned on non-stop throughout the day and into the evening.

31) Eventually, Plaintiff went outside and, from the sidewalk, asked Andrade if the work could be stopped for the night. Plaintiff had never before interacted with Andrade, Yap, or any of their guests. Ironically, Andrade initially indicated that she could not hear Plaintiff over the noise of the construction *and beckoned Plaintiff closer*. In response, Plaintiff stepped a few feet into Andrade's yard and repeated her request.

32) Andrade responded by **threatening to physically assault and *kill* Plaintiff**. Another woman, upon information and belief, Alysa Andrade's mother Arlene Andrade, told Plaintiff that she knew someone in the police department and would have Plaintiff arrested.

33) Plaintiff was shocked by her new neighbors' response to a reasonable and politely communicated request. Concerned by their threats, Plaintiff immediately left Andrade's yard, returned to her home.

34) Shortly thereafter, Plaintiff observed police lights in front of 87 Stieg Avenue. The construction noise had finally ceased by this point.

35) Plaintiff went outside to see why the police were present. Upon information and belief, there were two police cars and four officers present.

36) Officer Ryan Stam approached Plaintiff and, with the assistance of other officers, summarily arrested Plaintiff for trespass. The arrest was without legitimate probable cause and was based solely on the facially dubious, unsupported, uninvestigated, and false assertions of

Alysa Andrade, which Officer Stam unreasonably adopted as fact in official police
paperwork.

37) Officer Stam and his colleagues had observed no criminal conduct by Plaintiff, nor
confirmed Alyssa Andrade's bald allegation that Plaintiff "refused to leave [her yard] despite
numerous requests." A reasonable officer would have made further inquiries or sought
evidence independent of Andrade's claims or those of her family members and/or guests,
before summarily arresting Plaintiff, who had no prior criminal history.

38) Plaintiff, who was then 54 years old, stood 5'8", and weighed no more than 145 pounds, was
tightly handcuffed and roughly shoved into a police car. Plaintiff was then transported to the
122nd Precinct where she was kept handcuffed to a wall in a cell shared by a male inmate.

39) Officer Louis Campanella and other officers refused to provide Plaintiff food or water or to
afford her a phone call. Campanella and other officers refused to answer Plaintiff's questions
and told her to be quiet. Campanella told Plaintiff she would be kept overnight.

40) Even though the unfounded charges against her provided no conceivable basis for such
invasive action, Plaintiff was informed that she would be strip and cavity searched,
ostensibly according to "protocol."

41) Upon information and belief, there is no NYPD protocol dictating that persons arrested for
misdemeanor trespass must be strip or cavity searched.

42) Plaintiff was escorted to a bathroom to be searched. The officer who conducted this
unwarranted search, **Sergeant Mary Gillespie, inserted a finger into Plaintiff's rectum**.

43) As a result of this unnecessary, cruel and humiliating violation, Plaintiff suffered physical,
mental, and emotional injuries.

44) Gillespie led Plaintiff back to the cell where she was again handcuffed to the wall.

45) From the 122nd Precinct, Plaintiff was transported to the 120th Precinct in a police van along with a male prisoner. Upon arrival at the 120th Precinct, Plaintiff was searched again, this time in view of other officers.

46) Plaintiff was arraigned in handcuffs. She pled not guilty and was released on her own recognizance on the afternoon of July 18, 2023.

47) At the time of her release, Plaintiff had spent *over seventeen hours in police custody*.

48) Upon information and belief, ADA Rebecca Jerome handled Plaintiff's criminal prosecution.

49) On August 14, 2023, ADA Jerome and/or an unknown Richmond County ADA had Alysa Andrade sign a false written instrument in support of the charges against Plaintiff.

50) In order to defend herself against the baseless charges against her, Plaintiff retained private counsel.

51) On August 23, 2023, Plaintiff appeared in criminal court to answer the baseless charges against her. The People provided no discovery and the case was adjourned.

52) On October 23, 2023, Plaintiff *again* appeared in criminal court to answer the baseless charges against her. The People provided no discovery and the case was adjourned *again*.

53) In December 2023, despite having no history of such health issues, Plaintiff was diagnosed with high blood pressure.

54) On December 14, 2023, after Plaintiff had made repeated court appearances without receiving discovery from the People, the baseless charges against her were *finally* dismissed.

55) Despite knowing or having reason to know that the charges against Plaintiff were unfounded, the People attempted to induce Plaintiff to plead guilty to disorderly conduct. Upon information and belief, the People attempted to induce Plaintiff to accept this plea to

erroneously validate the unlawful actions of police and prosecutors, conceal their misconduct, and avoid liability for such conduct.

56) Upon information and belief, the People withheld discovery because they were aware disclosure would prove, *inter alia*, that: the charges against Plaintiff were unfounded and brought without any serious investigation; Plaintiff's arrest was based on her neighbors and/or their relatives having personal relationships with NYPD employees; police and prosecutors knew there was no basis to continue to prosecute Plaintiff on the charges as early as her arraignment; and/or, the police officers involved in Plaintiff's arrest, confinement, and the searches forced upon her committed misconduct and acted deliberately, willfully, recklessly, and/or with deliberate indifference to the law, their professional obligations, and Plaintiff's constitutional rights.

57) As a result of the Defendants' conduct, Plaintiff suffered physical, psychological, emotional, and economic injuries including, but not limited to, depression, anxiety, physical injury to her rectum, missed work and wages, and attorneys' fees.

58) To date, Plaintiff continues to be affected by the conduct of the Defendants, and Defendants continue to withhold information and evidence supporting the claims made herein.

## CAUSES OF ACTION

59) With respect to each cause of action, Plaintiff incorporates by reference each paragraph of this Complaint.

## FIRST CAUSE OF ACTION

**State-law malicious prosecution: Defendants Stam, Gillespie, Campanella, Jerome, and Does #1-10.**

60) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

61) Defendants Stam, Gillespie, Campanella, Jerome, and Does #1-10, individually and in concert with others, acted knowingly, willfully, intentionally, and with actual malice to initiate and/or to continue criminal proceedings against Plaintiff without probable cause.[1]

62) The proceedings terminated in Plaintiff's favor when the charges against her were dismissed and sealed.

63) Defendant City of New York is liable for Plaintiff's malicious prosecution under the principle of *respondeat superior*.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 Malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments. Defendants Stam, Gillespie, Campanella, Jerome, and Does #1-10.**

64) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

65) Defendants Stam, Gillespie, Campanella, Jerome, and Does #1-10, individually and in concert with others, acted knowingly, willfully, intentionally, and with actual malice to initiate and/or to continue criminal proceedings against Plaintiff without probable cause to believe Plaintiff was guilty of any crime or could be successfully prosecuted, and to deprive her of her liberty, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

66) The proceedings terminated in Plaintiff's favor when the charges against her were dismissed and sealed.

67) Defendants Stam, Gillespie, Campanella, Jerome and Does #1-10 are liable for their violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.

---

[1] A "plaintiff is allowed to plead in the alternative." <u>Breton v. City of New York</u>, 404 F.Supp.3d 799, 814 (S.D.N.Y. 2019)(Koeltl, J.), citing Federal Rule of Civil Procedure 8(d).

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 Evidence fabrication in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. Defendants Stam, Gillespie, Campanella, Jerome, and Does #1-10.**

68) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

69) Defendants Stam, Gillespie, Campanella, and Jerome (collectively, the "Individual Defendants"), individually and in concert with other investigators, acted deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, to cause the manufacturing of the criminal complaint against Plaintiff and/or the false supporting deposition endorsed by Alysa Andrade.

70) They did so for the purpose of causing criminal charges to be approved, and criminal proceedings to be initiated and continued, against Plaintiff.

71) The Individual Defendants, in their investigative capacity, forward the fabricated evidence to prosecutors for use against Plaintiff during a criminal prosecution.

72) The Individual Defendants knew that the fabricated evidence would be likely to influence a jury's decision at trial.

73) As a result of the Individual Defendants' forwarding of evidence they had fabricated to prosecutors, the DA's Office initiated a prosecution against Plaintiff and her liberty was infringed or curtailed.

74) The Individual Defendants' misconduct violated Plaintiff's right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution, and her right to procedural and substantive due process, as guaranteed to her by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

75) Alternatively, the Individual Defendants had an affirmative duty to Plaintiff to protect her above-mentioned constitutional rights from infringement by other government officials.

76) Defendant Stam knew that Plaintiff's rights would be violated if she was unlawfully arrested, confined, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes.

77) Defendant Gillespie knew that Plaintiff's rights would be violated if she was unlawfully confined and subjected to demeaning and injurious searches, held in custody against her will, and/or maliciously prosecuted on baseless charges and/or for ulterior purposes.

78) Defendant Campanella knew that Plaintiff's rights would be violated if she was unlawfully confined without food or water, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes.

79) Defendant Jerome knew that Plaintiff had been arrested without probable cause and the charges against her were baseless, and that Plaintiff's rights would be violated if Alysa Andrade's false allegations were repeated under oath as support for Plaintiff's continued malicious prosecution, if the baseless charges against Plaintiff were needlessly kept in place because of the withholding of discovery, and/or if Plaintiff was induced to plead guilty to *any* offense while favorable information that would undoubtedly influence her decision was withheld from her.

80) Each of them had reasonable opportunities to intervene to prevent such infringement of Plaintiff's constitutional rights.

81) Nevertheless, each of them deliberately, willfully, recklessly, and/or with deliberate indifference to the truth failed to take reasonable steps to intervene.

82) As a result of their failure to intervene, the Individual Defendants caused false evidence to be manufactured and forwarded to prosecutors, the DA's Office to initiate a prosecution of Plaintiff, and Plaintiff's liberty to be infringed or curtailed.

83) In failing to intervene, the Individual Defendants proximately caused the violation of Plaintiff's right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution, and her right to procedural and substantive due process, as guaranteed to her by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, and her resulting injuries.

84) The above misconduct by the Individual Defendants was outrageous and shocking to the conscience.

85) By virtue of the foregoing, the Individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

## FOURTH CAUSE OF ACTION

**State law abuse of process. Defendants Stam, Gillespie, Campanella, and Does #1-10.**

86) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

87) Plaintiff's arrest, confinement, and prosecution were affected for collateral purposes beyond legitimate criminal prosecution and without excuse or justification.

88) Plaintiff's arrest, confinement, and prosecution were affected for the purpose of appeasing her neighbors, Alysa Andrade and/or James Yap and/or the guests and/or family of Andrade and Yap, and/or permitting Andrade and Yap to continue to engage in disruptive and/or illegal and/or threatening behavior and/or act as they pleased with impunity by intimidating, humiliating, and/or taking retribution against those who would object to their conduct, such as Plaintiff.

89) Put simply, when Plaintiff requested that the persistent, loud, and invasive construction work her neighbors were having done cease for the evening, Andrade and/or guests clearly communicated that *they would **have her** arrested for this non-criminal conduct*, and this is what happened.

90) Then, Plaintiff was isolated without the ability to communicate, subjected to an unnecessary, humiliating, and painful search by Defendant Gillespie and denied food or water by Defendant Campanella. Then, Plaintiff was searched again by other officers. Contrary to the claims of police officers, the search Defendant Gillespie conducted was unrelated to protocol and affected for the aforementioned collateral purposes.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Abuse of process. Defendants Stam, Gillespie, Campanella, and Does #1-10.

91) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

92) Plaintiff's arrest, confinement, and prosecution were affected for collateral purposes beyond legitimate criminal prosecution and without excuse or justification.

93) Plaintiff's arrest, confinement, and prosecution were affected for the purpose of appeasing her neighbors, Alysa Andrade and/or James Yap and/or the guests and/or family of Andrade and Yap, and/or permitting Andrade and Yap to continue to engage in disruptive and/or illegal and/or threatening behavior and/or act as they pleased with impunity by intimidating, humiliating, and/or taking retribution against those who would object to their conduct, such as Plaintiff.

94) Put simply, when Plaintiff requested that the persistent, loud, and invasive construction work her neighbors were having done cease for the evening, Andrade and/or guests clearly

communicated that *they* would *have her* *arrested for this non-criminal conduct*, and this is what happened.

95) Then, Plaintiff was isolated without the ability to communicate, subjected to an unnecessary, humiliating, and painful search by Defendant Gillespie and denied food or water by Defendant Campanella. Then, Plaintiff was searched again by other officers. Contrary to the claims of police officers, the search Defendant Gillespie conducted was unrelated to protocol and affected for the aforementioned collateral purposes.

96) By virtue of the foregoing, the Individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

## SIXTH CAUSE OF ACTION
### 42 U.S.C. § 1983 Civil conspiracy. All Individual Defendants.

97) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

98) Defendants Stam, Gillespie, Campanella, Jerome and Does #1-10, along with non-City agents including, but not limited to, Alysa Andrada and James Yap, all explicitly and/or implicitly corruptly agreed to commit with each other and/or other unnamed conspirators, the wrongs detailed herein, and to ultimately have Plaintiff falsely arrested, unreasonably searched and baselessly prosecuted, and to cover-up each other's misconduct.

99) The named defendant co-conspirators are or were employees or agents of the NYPD or RCDAO.

100)    Specific evidence, as detailed above, proves that each named defendant became aware of information that undermined any probable cause to arrest or prosecute Plaintiff.

101)    Each named defendant, throughout Plaintiff's arrest and prosecution, either came into contact with one another or at least had reason to know of each other's existence.

102) Each defendant then committed overt acts, as detailed above, to accomplish the goal of the conspiracy, including, but not limited to (a) falsely arresting and prosecuting Plaintiff for trespass, and (b) covering up those actions and suppressing information and evidence demonstrating the baseless nature of the allegations against Plaintiff and the unlawful purpose(s) underlying her arrest and prosecution including Brady/Giglio/Rosario material, bodycam footage, and the identities of officers who participated in Plaintiff's arrest, search, and confinement.

103) By virtue of the foregoing, defendants are liable for conspiring to fabricate evidence and to deprive Plaintiff of her constitutional rights to:

a) Not be arrested, prosecuted, detained, searched or imprisoned based upon false, fabricated, manufacture, misleading, or inherently unreliable "evidence," including the statements of witnesses and who had ulterior motives and biases, in violation of the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, Zahrey v. Coffey, 221 F.3d 342, 349 (2000)(recognizing the "right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigative capacity");

b) Not to be deprived of her liberty or searched absent probable cause to believe she had committed a crime or any reason to believe a search would produce contraband or evidence of illegality, in violation of her rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

c) Timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and their progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

104) Each of the conspirators committed the foregoing violations of Plaintiff's constitutional rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to them, or the effect of such misconduct upon them.

105) By virtue of the foregoing, the defendants are liable to Plaintiff pursuant to 42 U.S.C. § 1983 for compensatory and punitive damages.

## SEVENTH CAUSE OF ACTION

### State law false arrest. Defendant City, Defendant Stam and Does #1-10.

106) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

107) Defendant Stam intended to arrest Plaintiff and caused her to be confined.

108) Plaintiff was aware of her confinement and did not consent to it.

109) The arrest and confinement of Plaintiff was not supported by legitimate probable cause. It was reportedly based solely on the facially dubious, unsupported, and false allegations of Alysa Andrade, which Defendant Stam failed to investigate or corroborate, and which did not provide a reasonable basis for Stam to believe Plaintiff had committed a crime.

110) The arrest and confinement of Plaintiff was not otherwise privileged.

111) Plaintiff was not indicted.

112) As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of freedom, and economic damages including loss of wages and attorneys' fees.

113) Defendant City, as employer of Defendant Officers, is responsible for Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

114) Plaintiff is entitled to punitive damages against the individual defendants.

## EIGHTH CAUSE OF ACTION

### False arrest under 42 U.S.C. § 1983. Defendant Stam and Does #1-10.

115) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

116) Defendant Stam intended to arrest Plaintiff and caused her to be confined.

117) Plaintiff was aware of her confinement and did not consent to it.

118) The arrest and confinement of Plaintiff was not supported by legitimate probable cause. It was reportedly based solely on the facially dubious, unsupported, and false allegations of Alysa Andrade, which Defendant Stam failed to investigate or corroborate, and which did not provide a reasonable basis for Stam to believe Plaintiff had committed a crime.

119) The arrest and confinement of Plaintiff was not otherwise privileged.

120) Plaintiff was not indicted.

121) As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of freedom, and economic damages including loss of wages and attorneys' fees.

122) Plaintiff is entitled to punitive damages against the individual defendants.

## NINTH CAUSE OF ACTION
### State law false imprisonment. Against all Defendants.

123) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

124) Defendants intended to confine Plaintiff and, lacking legitimate probable cause or any other privilege, curtailed her liberty by arresting her and taking steps to ensure she was imprisoned based on false "evidence" and without legal justification.

125) Plaintiff was conscious of the confinement and did not consent to it.

126) As a direct and proximate result of the Defendants' actions, Plaintiff was wrongfully arrested and falsely imprisoned, and suffered damages and injuries, during the time she was in jail from her arrest on July 17, 2023, until she was released on her own recognizance over seventeen hours later on July 18, 2023.

## TENTH CAUSE OF ACTION
### State law negligent infliction of emotional distress. Against all Defendants.

127) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

128) The Individual Defendants negligently and grossly negligently, and in breach of their duties to Plaintiff to refrain from withholding favorable evidence, and otherwise acting to deny Plaintiff due process of law, directly and proximately caused Plaintiff, who was innocent, to experience extreme emotional distress, and to be falsely arrested, wrongfully imprisoned, and maliciously prosecuted.

129) For the purposes of this cause of action, Plaintiff permissibly pleads in the alternative that the Individual Defendants acted unintentionally (and negligently), including when, but not limited to, the Individual Defendants withheld favorable evidence from Plaintiff, conducted a cavity search of Plaintiff without reason or basis to believe she possessed any safety concerns, conducted the cavity search under the negligent belief that it was proper protocol even though a bodily search had already been conducted, conducted the cavity search in an unsecured bathroom at the stationhouse, subjected Plaintiff to another search with no basis in front of male police officers, did not provide Plaintiff with water, transported Plaintiff to a second precinct, which unnecessarily prolonged her time in police custody, with a male prisoner in the van.

130) The actions of the Individual Defendants were extreme and outrageous and caused Plaintiff to suffer physical, mental, and emotional harm, and to fear for her safety while she was in custody and incarcerated.

131) Plaintiff's cause of action for negligent infliction of emotional distress by Defendants was unavailable to her until December 14, 2023, when the criminal proceedings against her were

terminated in her favor. Furthermore, this claim is tolled as the Defendants concealed from Plaintiff, and continue to conceal, their conduct giving rise to this cause of action.

## ELEVENTH CAUSE OF ACTION

**State law negligent hiring, training, and supervision. Against Defendant City of New York based on misconduct by employees of the NYPD.**

132) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

133) Plaintiff permissibly pleads in the alternative, for purposes of this cause of action, that named and unnamed NYPD employees committed egregious misconduct that fell outside the scope of their employment. Said misconduct included, but is not limited to, Defendant Stam arresting Plaintiff without legitimate probable cause for purposes unrelated to legitimate criminal prosecution, Defendant Gillespie conducting a humiliating and painful cavity search of Plaintiff with no basis in NYPD protocol, and Defendant Campanella depriving Plaintiff of food or water.

134) Plaintiff permissibly pleads in the alternative, for purposes of this cause of action, that these acts were committed wholly for personal reasons, such as promotions, raises, commendations, to appease civilians who had personal relationships with NYPD employees, and to exact retribution against Plaintiff on behalf of civilians through abuse of legal process. Defendant City of New York further knew, or should have known, the Individual Defendants had a propensity to commit such conduct.

135) During all times material to this Complaint, Defendant City of New York, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid

19

conduct by their subordinates violations the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

136)   **WHEREFORE**, Plaintiff Deborah Intorcia demands judgment against the Defendants as follows:

a.   Compensatory damages in an amount to be determined at trial;

b.   Punitive damages in an amount to be determined at trial;

c.   Damages for lost past and future income and benefits in an amount to be determined at trial;

d.   Damages for legal fees in an amount to be determined at trial;

e.   Reasonable attorneys' fees, together with costs and disbursements, under 42 U.S.C. § 1988 and the inherent powers of this Court;

f.   Pre-judgment interest as allowed by law; and

g.   Such other and further relief as this Court may deem to be just and proper.

**Dated:** July 11, 2024
       Brooklyn, New York

> Law Offices of James Henning & Associates, PLLC
> 16 Court Street, Suite 503
> Brooklyn, NY 11241
> Attorneys for Deborah Intorcia
>
> By
> James D. Henning, Esq.
> jhenning@jhenninglaw.com
> 718-717-2454

## VERIFICATION

**DEBORAH INTORCIA**, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

 

_____
Deborah Intorcia
Plaintiff

 

Sworn to before me this
11th day of July, 2024

_____
Notary Public

JACOB KETTELL MUSIAL
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in New York County
01KE6396657
MY COMMISSION EXPIRES 09/26/2027