UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

DEBORAH INTORCIA,                                    Case No.:
                                                     24-cv-04837 (KAM) (LB)

                        Plaintiff,                   **AMENDED COMPLAINT
                                                     AND JURY DEMAND**
                    v.

THE CITY OF NEW YORK; Officer RYAN T. STAM;
Sergeant LOUIS J. CAMPANELLA; Officer
CHRISTOPHER M. NG; Sergeant GREGORY
M. ACERRA; Sergeant JOHN J. FALZARANO; and
Officer KRISTEN CALDARARO in their individual and
official capacities,

                        Defendants.

_____

          Plaintiff DEBORAH INTORCIA, by her attorneys, LAW OFFICES OF JAMES

HENNING & ASSOCIATES, PLLC, respectfully alleges, upon information and belief, as

follows:

## INTRODUCTION

1)  On Monday July 17, 2023, Deborah Intorcia, a 55-year-old mother with no criminal history,

    was unlawfully arrested and confined because she made the entirely reasonable request that

    her neighbors cease disruptive construction that had continued non-stop throughout the day

    and into the evening.

2)  Upon information and belief, Deborah's unlawful arrest, ensuing confinement, and the

    humiliating searches perpetrated upon her while she was in police custody were affected

    because her neighbors are friends with police employees who they contacted to exact

    retribution upon her.

1

3) To that end, while in police custody on baseless allegations, Deborah was denied food and water, subjected to a degrading and painful cavity search, and transported—seated next to an inebriated and belligerent male arrestee—to another precinct where she was needlessly subjected to another unrecorded search.

4) Unsurprisingly, the baseless charges against Deborah were dismissed. Indeed, the prosecution conceded a motion to dismiss. However, this was only *after* Deborah was forced to make repeated court appearances and obtain paid defense counsel, and following repeated attempts by the prosecution to have Deborah plead guilty to avoid liability and exposure of the official misconduct underlying her wrongful arrest and confinement, unconstitutional searches, and malicious prosecution.

5) Adding insult to injury, after Deborah filed her initial Complaint in this matter, the City first failed to respond and then twice attempted to enforce a non-existent settlement that would have afforded Deborah a pittance for her damages.

6) Deborah Intorcia brings the present action to seek monetary compensation for the damages she suffered, exemplary and punitive damages for the gross misconduct underlying her wrongful arrest and malicious prosecution.

## JURISDICTION AND VENUE

7) This action arises under 42 U.S.C. §§ 1983 and 1988.

8) This Court may exercise supplemental jurisdiction over the State law causes of action herein.

9) Venue is proper under 28 U.S.C. § 1391.

10) On or about September 8, 2023, Plaintiff served the City of New York timely notice of the present claims, in accordance with N.Y. Gen. Mun. Law § 50-e. A hearing pursuant to N.Y. Gen. Mun. Law § 50-h was held on November 17, 2023.

11) More than 90 days have elapsed since submission of Plaintiff's notice of claim and her 50-h hearing and Defendant City has not settled the instant claim.

12) Plaintiff has duly complied with all the conditions precedent to the commencement of this action.

## **THE PARTIES**

13) Plaintiff, DEBORAH INTORCIA, is a resident of the State of New York and of the United States, and resides in STATEN ISLAND, New York.

14) Defendant, CITY OF NEW YORK, is a municipal corporation in the State of New York and a resident of the Eastern District of New York. Richmond County is a subdivision of the City.

15) Defendant, OFFICER RYAN T. STAM (Shield No.: 30923), was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

16) Defendant, SERGEANT LOUIS J. CAMPANELLA (Shield No.: 190), was at all relevant times a Sergeant employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

17) Defendant, SERGEANT GREGORY M. ACERRA (Shield No.: 4077), was at all relevant times a Sergeant employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

18) Defendant, OFFICER CHRISTOPHER M. NG (Shield No.: 29813), was at all relevant times an officer employed by the New York City Police Department ("NYPD"), acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

19) Defendant, SERGEANT JOHN J. FALZARANO (Shield No.: 2863), was at all relevant times a Sergeant employed by the NYPD, acting within the scope of his authority and under color of State law, unless otherwise specified. He is named in his individual and official capacities.

20) Defendant, OFFICER KRISTEN A. CALDARARO (Shield No.: 30512), was at all relevant times an officer employed by the NYPD, acting within the scope of her authority and under color of State law, unless otherwise specified. She is named in her individual and official capacities.

21) The NYPD is an agency of the City.

22) Employees of the NYPD are agents and employees of the City.

23) The City is legally responsible for torts that NYPD employees commit within the scope of their employment or under color of law.

## **STATEMENT OF FACTS**

24) Plaintiff is a 55-year-old mother of one. She holds a master's degree and is gainfully employed as a jeweler.

25) For over twenty-two years, Plaintiff and her husband have resided at 222 Leverett Avenue in Staten Island, New York, where they raised their child and enjoyed cordial relationships with neighbors.

26) Upon information and belief, in or around April 2023, Alysa Andrade and her husband James Yap, an emergency medical technician ("EMT") with the New York City Fire Department ("FDNY"), purchased the house at 87 Stieg Avenue, which neighbors the property where Plaintiff and her family have resided for over two decades.

27) Before July 17, 2023, Plaintiff had never been arrested. She trusted the criminal justice system and had previously placed her faith in the NYPD when the family business she runs with her husband was victimized by crime.

28) Upon information and belief, on July 17, 2023, Andrade and Yap were having construction done on the premises at 87 Stieg Avenue. Upon further information and belief, the work was being performed unlawfully[1].

29) The construction work began in the morning and woke Plaintiff at approximately 8 AM. It involved the use of hammers and power tools and was loud enough that it rattled the walls inside of Plaintiff's home. The incessant noise droned on throughout the day and into the evening.

30) Sometime after 7 PM, Plaintiff went outside and, from the sidewalk, asked Andrade if the work could be stopped for the night. Plaintiff had never before interacted with Andrade. Ironically, Andrade initially indicated that she could not hear Plaintiff over the noise of the construction *and beckoned Plaintiff closer*. In response, Plaintiff stepped a few feet into Andrade's yard and repeated her request.

---

[1] The NYC Department of Buildings requires an After Hours Variance (AHV) to perform construction activity before 7 AM or after 6 PM. https://www.nyc.gov/site/buildings/property-or-business-owner/after-hour-variances-info.page

31) Andrade responded by advancing on Plaintiff and **threatening to physically assault and *kill her***. Then, she remarked that she knew NYPD personnel and would have them arrest Plaintiff.

32) Plaintiff was shocked by her new neighbor's response to a reasonable request. Concerned by Andrade's threats and physical intimidation, Plaintiff immediately left Andrade's yard and returned to her own home.

33) Records indicate that Andrade called 911 at approximately 7:52 PM, and that the first NYPD units were dispatched in response to Andrade's report at 7:56 PM. In Andrade's call to 911, she stated that her call was not related to an emergency and that no weapons were involved in the dispute with her neighbor.

34) Records indicate that the first NYPD units responded to 87 Stieg Avenue at approximately 8:04 PM.

35) From her home, Plaintiff observed police cruiser lights in front of 87 Stieg Avenue. The construction noise had finally ceased by this point.

36) Plaintiff went outside to see why the police were present. Upon information and belief, two police cars and four officers, including Sergeant John Falzarano, Officer Christopher Ng and Officer Ryan Stam, responded to the scene. Upon further information and belief, Sergeant Falzarano was the ranking officer and supervisor at the scene.

37) Notably, Sergeant Falzarano is currently a named defendant in a lawsuit complaining of misconduct strikingly similar to that alleged by Plaintiff herein. Specifically, the Complaint in the currently pending matter of <u>Tumbarello v. City of New York</u>, 24-CV-3604, alleges, *inter alia*, that—as Plaintiff alleges he did here—Falzarano arrested a woman for trespassing

6

despite evidence contradicting the alleged basis for probable cause and implicating one of the witnesses against the arrestee in criminal conduct.

38) Ignoring the information Plaintiff and her husband offered, Officer Stam—with the assistance of the other officers and under the supervision and/or at the direction of Sergeant Falzarano—arrested Plaintiff for trespass, harassment, and disorderly conduct. The arrest was affected at or before 8:18 PM, less than fifteen (15) minutes after the first officers responded.

39) The arrest was affected without legitimate probable cause and was based solely on the facially dubious, unsupported, uninvestigated, and false assertions of Alysa Andrade, which Officer Stam and others unreasonably adopted as fact in official police paperwork. Although Maryanne Lombardi was listed as a witness in police paperwork, body worn camera footage demonstrates that she provided no genuine corroboration for Andrade's claims.[2]

40) Officer Stam and his colleagues had observed no criminal conduct by Plaintiff, nor confirmed Alyssa Andrade's bald allegation that Plaintiff "refused to leave [her yard] despite numerous requests." Indeed, body worn camera footage demonstrates that while Plaintiff remained reasonably calm throughout her documented interactions with responding officers, Andrade alternated between yelling at Plaintiff while she spoke with the officers and crying when completing paperwork with them. Moreover, the footage demonstrates that Andrade actually acknowledged advancing on Plaintiff. Reasonable officers would have made further inquiries or sought actual evidence independent of Andrade's claims before arresting Plaintiff, who had no prior criminal history.

---

[2] This proposition is supported by the fact that Lombardi was evidently never even spoken to by prosecutors, who conceded Plaintiff's motion to dismiss all the criminal charges against her despite Andrade explicitly communicating her willingness to testify against Plaintiff and her (Andrade's) desire that Plaintiff "take accountability and never do this again."

41) The body worn camera footage provided by the City demonstrates that the only apparent "efforts" the responding officers (Defendants Falzarano and Stam and Ng) made to "substantiate" Andrade's allegations were cursory conversations with Maryanne Lombardi, who offered no genuine corroboration. In addition, the responding officers were dismissive of the efforts by Plaintiff and her husband to explain and deescalate the situation, and that they ignored the aggressive conduct of Andrade and ridiculed the reports by Plaintiff and her husband regarding Andrade's claim of an ability to influence NYPD actions.

42) Plaintiff, who was then 54 years old, stood 5'8", and weighed no more than 145 pounds, was tightly handcuffed and shoved into a police car. Plaintiff was then transported to the 122nd Precinct where she was kept handcuffed to a wall in a room shared by a belligerent male inmate.

43) Upon information and belief, Sergeants Louis Campanella and Gregory Acerra were the supervising officers during Plaintiff's confinement at the 122nd Precinct and were responsible for directing and supervising the conduct of subordinate officers, including Officers Stam and Kristen Caldararo.[3] Campanella and Acerra, along with other officers acting under their supervision and/or at their direction, refused to provide Plaintiff food or water or to afford her a phone call. Campanella and Acerra, along with other officers acting under their supervision and/or at their direction, refused to answer Plaintiff's questions and told her to be quiet. Campanella told Plaintiff she would be kept overnight. Upon information and belief,

---

[3] Sergeant Acerra was reportedly disciplined for a 2019 incident during which he repeatedly referred to a transgender individual he arrested as "it." Although the Civilian Complaint Review Board (hereinafter "CCRB") substantiated the complaint against Acerra and recommended he be disciplined by the forfeiture of 10 vacation days, the NYPD demonstrated its indifference to his misconduct by closing the case with a finding that Acerra was not guilty.

8

one or both of Campanella and Acerra would have had to direct and/or approve the unlawful search conducted by Caldararo and discussed *infra*.

44) Officer Kristen Caldararo, wearing blue surgical gloves, then ordered Plaintiff to remove her jewelry and hair tie, as she unfastened Plaintiff's handcuffs. As Officers Stam and Ng stood guard, Officer Caldararo asked Plaintiff if she was wearing a bra, and whether she had anything on her that she was not supposed to have. When Plaintiff responded "no" and that she had just got out of the shower, Officer Ng assisted Officer Caldararo by opening a black glove, and Officer Caldararo placed Plaintiff's jewelry inside.

45) Officer Caldararo then ordered Plaintiff to go to the bathroom with her. Officer Caldararo then escorted Plaintiff into the bathroom, while Officer Stam and Officer Ng stood guard outside. The officer who conducted this unwarranted search, **Officer Kristen Caldararo, *inserted a finger into Plaintiff's rectum***. When Plaintiff asked Officer Caldararo why she was doing this, Caldararo erroneously claimed that it was "protocol."

46) Officer Caldararo left her body worn camera on a table outside of the bathroom where this search occurred, ensuring that her misconduct would go undocumented, but the existing footage clearly shows Caldararo wearing surgical gloves.

47) Officer Caldararo had been disciplined for official misconduct for three years in a row at the time she searched Plaintiff. Caldararo has no less than four substantiated complaints, including at least two incidents preceding the conduct Plaintiff complains of herein where she was disciplined for misconduct including the failure to activate her body worn camera.

48) Upon information and belief, there is no NYPD protocol dictating that persons arrested for misdemeanor trespass, harassment, or disorderly conduct must be cavity searched. Upon further information and belief, NYPD protocol dictates that any cavity search can only be

conducted pursuant to a lawful strip search upon reasonable suspicion that the person to be searched is concealing weapons, contraband, or evidence that cannot be discovered through routine methods. If the officer can establish a factual basis to conduct a strip search, requests and receives authorization from his supervising officer to conduct a strip search, and, during the search, visually detects an object or foreign material within that person's body cavity, **only then may the officer seek a search warrant to conduct a cavity search.** Upon further information and belief, NYPD protocol dictates that a cavity search must be conducted by a medical professional, and under no circumstances should such a search be conducted by a member of the police force.

49) Sgt. Campanella and Sgt. Acerra did not attempt to obtain the necessary search warrant or medical personnel for Plaintiff's cavity search.

50) Furthermore, upon information and belief, NYPD protocol dictates that if an officer conducts a strip search, such information must be entered into the command log, the arresting officer's activity log, and documented in the online booking system arrest worksheet or arrest report. Sgt. Campanella and Sgt. Acerra either failed to properly log Plaintiff's invasive cavity search or doctored entries reflecting the search. This is so because such information is not indicated on any of the aforementioned paperwork.

51) As a result of this unnecessary, cruel, and humiliating violation, Plaintiff suffered physical, mental, and emotional injuries.

52) Caldararo led Plaintiff back to the cell where she was again handcuffed to the wall.

53) From the 122nd Precinct, Defendant Stam and another officer transported Plaintiff to the 120th Precinct in a squad car along with a male prisoner who was clearly intoxicated and

belligerent. No effort was made to separate Plaintiff from potential harm at the hands of this male prisoner.

54) Upon arrival at the 120th Precinct, Plaintiff was searched *again*. In contrast with the cavity search conducted by Officer Caldararo, this unrecorded search by an unidentified female officer was conducted in full view of male officers.

55) Plaintiff was arraigned in handcuffs. She pled not guilty, declined a plea offer, and was released on her own recognizance on the afternoon of July 18, 2023.

56) At the time of her release, Plaintiff had spent *over fifteen (15) hours in police custody*.

57) To defend herself against the baseless charges against her, Plaintiff retained private counsel at her own expense.

58) On August 23, 2023, Plaintiff appeared in criminal court to answer the baseless charges against her. Plaintiff refused a plea offer conveyed by the People and the case was adjourned.

59) On October 23, 2023, Plaintiff *again* appeared in criminal court to answer the baseless charges against her. *Once again*, Plaintiff refused a plea offer conveyed by the People and the case was adjourned *again*.

60) In December 2023, despite having no history of such health issues, Plaintiff was diagnosed with high blood pressure.

61) On December 8, 2023, the People informed the Court that they were conceding Plaintiff's motion to dismiss.

62) On December 14, 2023, after Plaintiff had made repeated court appearances without receiving discovery from the People, the baseless charges against her were *finally* dismissed.

63) Despite knowing or having reason to know that the charges against Plaintiff were unfounded, the People attempted to induce Plaintiff to plead guilty to disorderly conduct. Upon

information and belief, the People attempted to induce Plaintiff to accept this plea to erroneously validate the unlawful actions of police and prosecutors, conceal their misconduct, and avoid liability for such conduct.

64) Upon information and belief, the People withheld discovery because they were aware disclosure would prove, *inter alia*, that: the charges against Plaintiff were unfounded and brought without any serious investigation; Plaintiff's arrest was based on her neighbors and/or their relatives having personal relationships with NYPD employees; police and prosecutors knew there was no basis to continue to prosecute Plaintiff on the charges as early as her arraignment; and/or, the police officers involved in Plaintiff's arrest, confinement, and the searches forced upon her committed misconduct and acted deliberately, willfully, recklessly, and/or with deliberate indifference to the law, their professional obligations, and Plaintiff's constitutional rights; and/or that some of these officers had demonstrable histories of misconduct.

65) As a result of the Defendants' conduct, Plaintiff suffered physical, psychological, emotional, and economic injuries including, but not limited to, depression, anxiety, physical injury to her rectum, missed work and wages, and attorneys' fees.

66) On July 11, 2024, Plaintiff filed her first Complaint in this matter.

67) By August 28, 2024, despite Plaintiff's counsel going above and beyond to contact the City Law Department about their failure to respond to Plaintiff's Complaint, the City had failed to answer the Complaint.

68) After the City was saved from a default judgment, rather than seriously consider Plaintiff's claims, the City attempted to enforce a non-existent settlement purportedly entered into by

Plaintiff's prior (since-discharged) counsel. At a September 11, 2024, conference, the Court rejected this argument and ordered the City to begin discovery immediately.

69) Rather than comply with the Court's order, on September 24, 2024, the City submitted a pre-motion conference letter that **again** asked for the Court to dismiss the matter because of this non-existent settlement.

70) On October 18, 2024, after their second attempt to enforce this non-existent settlement failed, the City provided the first disclosures to Plaintiff.

71) On October 25, 2024, the City provided body worn camera footage to Plaintiff.

72) To date, Plaintiff continues to be affected by the conduct of the Defendants, and Defendants continue to withhold information and evidence supporting the claims made herein.

## CAUSES OF ACTION

73) With respect to each cause of action, Plaintiff incorporates by reference each paragraph of this Complaint.

## FIRST CAUSE OF ACTION

### State-law malicious prosecution: Defendants Stam, Ng, and Falzarano.

74) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

75) Defendants Stam, Ng, and Falzarano, individually and in concert with others, acted knowingly, willfully, intentionally, and with actual malice to initiate and/or to continue criminal proceedings against Plaintiff without probable cause.[4]

76) The proceedings terminated in Plaintiff's favor when the charges against her were dismissed and sealed.

---

[4] A "plaintiff is allowed to plead in the alternative." Breton v. City of New York, 404 F.Supp.3d 799, 814 (S.D.N.Y. 2019)(Koeltl, J.), citing Federal Rule of Civil Procedure 8(d).

77) Defendant City of New York is liable for Plaintiff's malicious prosecution under the principle of *respondeat superior*.

## SECOND CAUSE OF ACTION

**42 U.S.C. § 1983 Malicious prosecution in violation of the Fourth, Fifth, and Fourteenth Amendments. Defendants Stam, Ng, and Falzarano.**

78) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

79) Defendants Stam, Ng, and Falzarano, individually and in concert with others, acted knowingly, willfully, intentionally, and with actual malice to initiate and/or to continue criminal proceedings against Plaintiff without probable cause to believe Plaintiff was guilty of any crime or could be successfully prosecuted, and to deprive her of her liberty, in violation of her rights under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

80) The proceedings terminated in Plaintiff's favor when the charges against her were dismissed and sealed.

81) Defendants Stam, Ng, and Falzarano are liable for their violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.

## THIRD CAUSE OF ACTION

**42 U.S.C. § 1983 Evidence fabrication in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. All Defendants.**

82) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

83) Defendants Stam, Ng, Falzarano, Campanella, Caldarado, and Acerra (collectively, the "Individual Defendants"), individually and in concert with other investigators, acted deliberately, willfully, recklessly, and/or with deliberate indifference to the truth, to cause the

manufacturing of the criminal complaint against Plaintiff and/or the false supporting deposition endorsed by Alysa Andrade.

84) They did so for the purpose of causing criminal charges to be approved, and criminal proceedings to be initiated and continued, against Plaintiff.

85) The Individual Defendants, in their investigative capacity, forward the fabricated evidence to prosecutors for use against Plaintiff during a criminal prosecution.

86) The Individual Defendants knew that the fabricated evidence would be likely to influence a jury's decision at trial.

87) As a result of the Individual Defendants' forwarding of evidence they had fabricated to prosecutors, the DA's Office initiated a prosecution against Plaintiff and her liberty was infringed or curtailed.

88) The Individual Defendants' misconduct violated Plaintiff's right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution, and her right to procedural and substantive due process, as guaranteed to her by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

89) The Individual Defendants are liable for their violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983.

## <u>FOURTH CAUSE OF ACTION</u>

**42 U.S.C. § 1983 Failure to Intervene in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. All Individual Defendants.**

90) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

91) The Individual Defendants had an affirmative duty to Plaintiff to protect her above-mentioned constitutional rights from infringement by other government officials.

92) Defendant Stam knew that Plaintiff's rights would be violated if she was unlawfully arrested, confined, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes.

93) Defendant Campanella knew that Plaintiff's rights would be violated if she was unlawfully confined for over fifteen (15) hours without food or water, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes. Campanella also knew, as a supervising officer, that Plaintiff's rights would be violated if officers acting under his (Campanella's) supervision and/or at his direction, engaged in misconduct.

94) Defendant Acerra knew that Plaintiff's rights would be violated if she was unlawfully confined for over fifteen (15) hours without food or water, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes. Acerra also knew, as a supervising officer, that Plaintiff's rights would be violated if officers acting under his (Acerra's) supervision and/or at his direction, engaged in misconduct.

95) Defendant Falzarano knew that Plaintiff's rights would be violated if she was unlawfully arrested, confined for over fifteen (15) hours, searched, and/or maliciously prosecuted without legitimate probable cause and/or for ulterior purposes. Falzarano also knew, as a supervising officer, that Plaintiff's rights would be violated if officers acting under his (Falzarano's) supervision and/or at his direction, engaged in misconduct.

96) Defendant Caldararo knew that Plaintiff's rights would be violated if she was subjected to an intrusive and unnecessary cavity search under the guise of "protocol." Indeed, Caldararo knew that her conduct was actually in violation of NYPD protocol, as demonstrated by the fact that she took affirmative steps to ensure that this violation was undocumented by removing her body worn camera.

16

97) Each of the Individual Defendants had reasonable opportunities to intervene to prevent such infringement of Plaintiff's constitutional rights.

98) Nevertheless, each of them deliberately, willfully, recklessly, and/or with deliberate indifference to the truth failed to take reasonable steps to intervene.

99) In failing to intervene, the Individual Defendants proximately caused the violation of Plaintiff's right to be free from unreasonable search and seizure, as guaranteed by the Fourth Amendment to the United States Constitution; the violation of her right to procedural and substantive due process, as guaranteed to her by the Fifth and Fourteenth Amendments to the United States Constitution; the violation of her right to a fair trial, as guaranteed to her by the Sixth Amendment to the United States Constitution; and her resulting injuries.

100)    By virtue of the foregoing, the Individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

## FIFTH CAUSE OF ACTION

### State law abuse of process. All Defendants.

101)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

102)    Plaintiff's arrest, confinement, and prosecution were affected for collateral purposes beyond legitimate criminal prosecution and without excuse or justification.

103)    Plaintiff's arrest, confinement, and prosecution were affected for the purpose of appeasing her neighbors, Alysa Andrade and/or James Yap and/or the guests and/or family of Andrade and Yap, and/or permitting Andrade and Yap to continue to engage in disruptive and/or illegal and/or threatening behavior and/or act as they pleased with impunity by intimidating, humiliating, and/or taking retribution against those who would object to their conduct, such as Plaintiff.

17

104)    Put simply, when Plaintiff requested that the persistent, loud, and invasive construction work her neighbors were having done cease for the evening, Andrade clearly communicated that **she** *would* **have her** *arrested for this non-criminal conduct*, and this is what happened.

105)    Then, Plaintiff was isolated without the ability to communicate, subjected to an unnecessary, humiliating, and painful search by Defendant Caldararo and denied food or water. Then, Plaintiff was searched again by other officers. Contrary to the claims of police officers, the search Defendant Caldararo conducted was unrelated to protocol and affected for the aforementioned collateral purposes.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Abuse of process. All Defendants.

106)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

107)    Plaintiff's arrest, confinement, and prosecution were affected for collateral purposes beyond legitimate criminal prosecution and without excuse or justification.

108)    Plaintiff's arrest, confinement, and prosecution were affected for the purpose of appeasing her neighbors, Alysa Andrade and/or James Yap and/or the guests and/or family of Andrade and Yap, and/or permitting Andrade and Yap to continue to engage in disruptive and/or illegal and/or threatening behavior and/or act as they pleased with impunity by intimidating, humiliating, and/or taking retribution against those who would object to their conduct, such as Plaintiff.

109)    Put simply, when Plaintiff requested that the persistent, loud, and invasive construction work her neighbors were having done cease for the evening, Andrade clearly communicated that **she** *would* **have her** *arrested for this non-criminal conduct*, and this is what happened.

110)    Then, Plaintiff was isolated without the ability to communicate, subjected to an

unnecessary, humiliating, and painful search by Defendant Caldararo and denied food or

water. Then, Plaintiff was searched again by other officers. Contrary to the claims of police

officers, the search Defendant Caldararo conducted was unrelated to protocol and affected

for the aforementioned collateral purposes.

111)    By virtue of the foregoing, Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

### SEVENTH CAUSE OF ACTION

**42 U.S.C. § 1983 Civil conspiracy. All Individual Defendants.**

112)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if

fully set forth herein.

113)    Defendants Stam, Campanella, Acerra, Falzarano, and Caldararo, along with non-City

agents including, but not limited to, Alysa Andrada and James Yap, all explicitly and/or

implicitly corruptly agreed to commit with each other and/or other unnamed conspirators, the

wrongs detailed herein, and to ultimately have Plaintiff falsely arrested, unreasonably

searched and baselessly prosecuted, and to cover-up each other's misconduct.

114)    The named defendant co-conspirators are or were employees or agents of the NYPD.

115)    Specific evidence, as detailed above, proves that each named defendant became aware of

information that undermined any probable cause to arrest or prosecute Plaintiff.

116)    Each named defendant, throughout Plaintiff's arrest and prosecution, either came into

contact with one another or at least had reason to know of each other's existence.

117)    Each defendant then committed overt acts, as detailed above, to accomplish the goal of

the conspiracy, including, but not limited to (a) falsely arresting and prosecuting Plaintiff for

trespass, and (b) covering up those actions and suppressing information and evidence

demonstrating the baseless nature of the allegations against Plaintiff and the unlawful

purpose(s) underlying her arrest and prosecution including <u>Brady</u>/<u>Giglio</u>/<u>Rosario</u> material,

bodycam footage, and the identities of officers who participated in Plaintiff's arrest, search,

and confinement.

118) By virtue of the foregoing, defendants are liable for conspiring to fabricate evidence and

to deprive Plaintiff of her constitutional rights to:

a) Not be arrested, prosecuted, detained, searched or imprisoned based upon false,
fabricated, manufacture, misleading, or inherently unreliable "evidence," including the
statements of witnesses and who had ulterior motives and biases, in violation of the Due
Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth Amendments to the
United States Constitution, <u>Zahrey v. Coffey</u>, 221 F.3d 342, 349 (2000)(recognizing the
"right not to be deprived of liberty as a result of the fabrication of evidence by a
government officer acting in an investigative capacity");

b) Not to be deprived of her liberty or searched absent probable cause to believe she had
committed a crime or any reason to believe a search would produce contraband or
evidence of illegality, in violation of her rights under the Fourth and Fourteenth
Amendments to the United States Constitution; and

c) Timely disclosure of all material evidence favorable to the defense pursuant to <u>Brady v.
Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), and their
progeny, and the Due Process and Fair Trial Clauses of the Fifth, Sixth, and Fourteenth
Amendments to the United States Constitution.

119) Each of the conspirators committed the foregoing violations of Plaintiff's constitutional

rights knowingly, intentionally, willfully, recklessly, and/or with deliberate indifference to

them, or the effect of such misconduct upon them.

120) By virtue of the foregoing, the defendants are liable to Plaintiff pursuant to 42 U.S.C. §

1983 for compensatory and punitive damages.

## **EIGHTH CAUSE OF ACTION**

**State law false arrest. Defendant City, Defendants Stam, Ng, and Falzarano.**

121) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if

fully set forth herein.

122) Defendants Stam, Ng, and Falzarano intended to arrest Plaintiff and caused her to be confined.

123) Plaintiff was aware of her confinement and did not consent to it.

124) The arrest and confinement of Plaintiff was not supported by legitimate probable cause. It was reportedly based solely on the facially dubious, unsupported, and false allegations of Alysa Andrade, which Defendants Stam and Falzarano failed to investigate or corroborate, and which did not provide a reasonable basis for them to believe Plaintiff had committed a crime.

125) The arrest and confinement of Plaintiff was not otherwise privileged.

126) Plaintiff was not indicted.

127) As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of freedom, and economic damages including loss of wages and attorneys' fees.

128) Defendant City, as employer of Defendant Officers, is responsible for Defendant Officers' wrongdoing under the doctrine of *respondeat superior*.

129) Plaintiff is entitled to punitive damages against the individual defendants.

## NINTH CAUSE OF ACTION

### False arrest under 42 U.S.C. § 1983. Defendants Stam, Ng, and Falzarano.

130) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

131) Defendants Stam, Ng, and Falzarano intended to arrest Plaintiff and caused her to be confined.

132) Plaintiff was aware of her confinement and did not consent to it.

133)    The arrest and confinement of Plaintiff was not supported by legitimate probable cause. It was reportedly based solely on the facially dubious, unsupported, and false allegations of Alysa Andrade, which Defendants Stam and Falzarano failed to investigate or corroborate, and which did not provide a reasonable basis for them to believe Plaintiff had committed a crime.

134)    The arrest and confinement of Plaintiff was not otherwise privileged.

135)    Plaintiff was not indicted.

136)    As a result of defendants' conduct, Plaintiff has suffered physical pain and mental anguish, shock, fright, apprehension, embarrassment, humiliation, loss of freedom, and economic damages including loss of wages and attorneys' fees.

137)    Plaintiff is entitled to punitive damages against the individual defendants.

## TENTH CAUSE OF ACTION

### State law false imprisonment. Against all Defendants.

138)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

139)    Defendants intended to confine Plaintiff and, lacking legitimate probable cause or any other privilege, curtailed her liberty by arresting her and taking steps to ensure she was imprisoned based on false "evidence" and without legal justification.

140)    Plaintiff was conscious of the confinement and did not consent to it.

141)    As a direct and proximate result of the Defendants' actions, Plaintiff was wrongfully arrested and falsely imprisoned, and suffered damages and injuries, during the time she was in jail from her arrest on July 17, 2023, until she was released on her own recognizance over seventeen hours later on July 18, 2023.

## ELEVENTH CAUSE OF ACTION

**42 U.S.C. § 1983 Unlawful search in violation of the Fourth Amendment. All Defendants**

142)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

143)    Defendant Caldararo administered an intrusive, painful, and illegal cavity search on Plaintiff in violation of her right to be free from unreasonable searches and seizures, as guaranteed to her by the Fourth Amendment.

144)    Defendant Caldararo's search was objectively unreasonable. As discussed *infra*, Defendant Caldararo failed to establish reasonable suspicion that Plaintiff was in possession of contraband, weapons, or evidence that could not be found through routine measures to justify a strip search and, thereby, a cavity search. Similarly, Defendant Caldararo failed to visually observe such materials in Plaintiff's body cavity that would give rise to probable cause to obtain a search warrant to conduct a cavity search, as required by NYPD protocol.

145)    All named Defendants personally participated in the unlawful search. Defendants Falzarano, Stam, and Ng caused Plaintiff to be subjected to an invasive cavity search after initiating a retaliatory false arrest. Additionally, Defendants Ng and Stam knew that Plaintiff was to be strip searched when they witnessed Defendant Caldararo remove her body worn camera and lead Plaintiff into a separate room. Defendants Acerra and Campanella, in their supervisory role, knew about searches being conducted, and were required to but failed to document such activity.

146)    The invasive and painful cavity search caused Plaintiff to incur physical, mental, and emotional injuries.

147)    By virtue of the foregoing, the Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

## TWELFTH CAUSE OF ACTION

**42 U.S.C. § 1983 Excessive Force in violation of the Fourth Amendment. All Defendants.**

148)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

149)    Defendant Caldararo administered an intrusive, painful, and illegal cavity search on Plaintiff in violation of her right to be free from unreasonable searches and seizures, as guaranteed to her by the Fourth Amendment.

150)    As discussed *infra*, at no point did Defendant Caldararo establish a legitimate need for the use of a cavity search or follow the appropriate protocol to initiate such a search. Rather Defendant Caldararo falsely stated that it was, in fact, NYPD protocol to invade Plaintiff's person and privacy because she had been arrested for trespassing.

151)    As such, the amount of force used during Plaintiff's unjustified cavity search clearly outweighed the need for such a search, which was not established. The Defendants had absolutely no reason to believe that Plaintiff was secreting weapons or possessed contraband. In fact, when Andrade called 911 to begin with, she stated that no weapons were involved in the dispute with her neighbor and that it was not an emergency.

152)    Defendant Caldararo acted maliciously, sadistically, and in bad faith when she conducted this invasive and painful cavity search as evidenced by her knowing misrepresentation and the fact that she removed her body camera prior to conducting the search.

153)    All named Defendants personally participated in the use of excessive force. Defendants Falzarano, Stam, and Ng caused Plaintiff to be subjected to an invasive cavity search after initiating a retaliatory false arrest. Additionally, Defendants Ng and Stam knew that Plaintiff was to be strip searched when they witnessed Defendant Caldararo remove her body worn camera and lead Plaintiff into a separate room. Defendants Acerra and Campanella, in their

24

supervisory role, knew about searches being conducted, and were required to but failed to document such activity.

154)   The invasive and painful cavity search caused Plaintiff to incur physical, mental, and emotional injuries.

155)   By virtue of the foregoing, the defendants are liable to Plaintiff under 42 U.S.C. § 1983.

**THIRTEENTH CAUSE OF ACTION**

**State law assault and battery. Defendant City and Defendant Caldararo.**

156)   Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

157)   Defendant Caldararo administered an intrusive, painful, and illegal cavity search on Plaintiff in violation of state law and NYPD protocols.

158)   The amount of force used by Caldararo was certainly excessive. As alleged *infra*, Defendant Caldararo did not observe any of the attendant circumstances that could precipitate a legitimate cavity search, nor was she, as she claimed, required to administer one because of arrest protocol.

159)   The amount of force used during Plaintiff's unjustified cavity search clearly outweighed the need for such a search, which was not established.

160)   Defendant Caldararo's actions were objectively unreasonable because she acted maliciously, sadistically, and in bad faith when she conducted this invasive and painful cavity search as evidenced by her knowing misrepresentation of the alleged "protocol" and the fact that she removed her body camera prior to conducting the search.

161)   The invasive and painful cavity search caused Plaintiff to incur physical, mental, and emotional injuries.

162) By virtue of the foregoing, Defendant Caldararo is liable to Plaintiff under New York common-law.

163) Defendant City of New York is liable to Plaintiff under a theory of *respondeat superior*.

### FOURTEENTH CAUSE OF ACTION

**State law negligent infliction of emotional distress. Against all Defendants.**

164) Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

165) The Individual Defendants negligently and grossly negligently, and in breach of their duties to Plaintiff to refrain from withholding favorable evidence, and otherwise acting to deny Plaintiff due process of law, directly and proximately caused Plaintiff, who was innocent, to experience extreme emotional distress, and to be falsely arrested, wrongfully imprisoned, and maliciously prosecuted.

166) For the purposes of this cause of action, Plaintiff permissibly pleads in the alternative that the Individual Defendants acted unintentionally (and negligently), including when, but not limited to, the Individual Defendants withheld favorable evidence from Plaintiff, conducted a cavity search of Plaintiff without reason or basis to believe she possessed any safety concerns, conducted the cavity search under the negligent belief that it was proper protocol even though a bodily search had already been conducted, conducted the cavity search in an unsecured bathroom at the stationhouse, subjected Plaintiff to another search with no basis in front of male police officers, did not provide Plaintiff with water, transported Plaintiff to a second precinct, which unnecessarily prolonged her time in police custody, with a male prisoner in the van.

167)    The actions of the Individual Defendants were extreme and outrageous and caused Plaintiff to suffer physical, mental, and emotional harm, and to fear for her safety while she was in custody and incarcerated.

168)    Plaintiff's cause of action for negligent infliction of emotional distress by Defendants was unavailable to her until December 14, 2023, when the criminal proceedings against her were terminated in her favor.  Furthermore, this claim is tolled as the Defendants concealed from Plaintiff, and continue to conceal, their conduct giving rise to this cause of action.

### FIFTEENTH CAUSE OF ACTION

**State law negligent hiring, training, and supervision. Against Defendant City of New York based on misconduct by employees of the NYPD.**

169)    Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

170)    Plaintiff permissibly pleads in the alternative, for purposes of this cause of action, that named and unnamed NYPD employees committed egregious misconduct that fell outside the scope of their employment. Said misconduct included, but is not limited to, Defendants Stam and Falzarano arresting Plaintiff without legitimate probable cause for purposes unrelated to legitimate criminal prosecution, Defendant Caldararo conducting a humiliating and painful cavity search of Plaintiff with no basis in NYPD protocol, and Defendants Campanella, Acerra, and others depriving Plaintiff of food or water.

171)    Plaintiff permissibly pleads in the alternative, for purposes of this cause of action, that these acts were committed wholly for personal reasons, such as promotions, raises, commendations, to appease civilians who had personal relationships with NYPD employees, and to exact retribution against Plaintiff on behalf of civilians through abuse of legal process. Defendant City of New York further knew, or should have known, the Individual Defendants

had a propensity to commit such conduct. Indeed, before the conduct complained of herein, Defendants Acerra, Falzarano, and Caldararo had a documented history of police misconduct known to Defendant City, including conduct mirroring allegations in the instant complaint.

172)    During all times material to this Complaint, Defendant City of New York, through its policymakers, owed a duty to the public at large and to Plaintiff, which such policymakers knowingly and intentionally breached, or to which they were deliberately indifferent, to implement policies, procedures, customs, and practices sufficient to prevent, deter, and avoid conduct by their subordinates violations the aforementioned constitutional rights of criminal suspects or defendants and of other members of the public.

173)    **WHEREFORE**, Plaintiff Deborah Intorcia demands judgment against the Defendants as follows:

   a.   Compensatory damages in an amount to be determined at trial;

   b.   Punitive damages in an amount to be determined at trial;

   c.   Damages for lost past and future income and benefits in an amount to be determined at trial;

   d.   Damages for legal fees in an amount to be determined at trial;

   e.   Reasonable attorneys' fees, together with costs and disbursements, under 42 U.S.C. § 1988 and the inherent powers of this Court;

   f.   Pre-judgment interest as allowed by law; and

   g.   Such other and further relief as this Court may deem to be just and proper.

**Dated:** November 7, 2024
        Brooklyn, New York

                                    Law Offices of James Henning & Associates, PLLC
                                    16 Court Street, Suite 503
                                    Brooklyn, NY 11241
                                    Attorneys for Deborah Intorcia

By: *James Henning*
James D. Henning, Esq.
Jhenning@jhenninglaw.com
718-717-2454

<u>VERIFICATION</u>

**DEBORAH INTORCIA**, being duly sworn, deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing

Amended complaint and know the contents thereof. The same are true to my knowledge, except

as to matters therein stated to be alleged on information and belief and as to those

matters I believe them to be true.

_____
Deborah Intorcia
Plaintiff

Sworn to before me this

_8ᵗʰ_ day of _November_ , 2024

_____
Notary Public

