```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
```
DEBORAH INTORCIA,

        *Plaintiff*,  **MEMORANDUM & ORDER**

  - against -  No. 24-CV-4837(KAM)(LB)

CITY OF NEW YORK, ET AL.,

        *Defendants*.

```
-----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge**:

    Defendants, City of New York, Ryan T. Stam, Louis J. Campanella, Christopher M. Ng, Gregory M. Acerra, John J. Falzarano, and Kristen A. Caldararo, (collectively, "Defendants") have objected to (1) a February 20, 2025, discovery ruling by Magistrate Judge Lois Bloom as to Interrogatory 14, (ECF No. 45, Transcript of Proceedings held on February 20, 2025, the "February 20 Discovery Order"), and (2) a March 12, 2025, discovery ruling arising from Officer Caldararo's deposition on that date in which she testified that she received a call on one of her cell phones or radio from her sergeant to search Plaintiff following Plaintiff's arrest (ECF No. 55, Transcript of Proceedings held on March 12, 2025, the "March 12 Discovery Order"). (*See* ECF No. 69, "Objection.") Defendants also objects to Judge Bloom's denials of Defendants' motions for reconsideration in the February 20 Discovery Order and the March 12 Discovery Order. (*See* ECF No.

62.) The Court has reviewed the February 20 Discovery Order, the March 12 Discovery Order, the denials on reconsideration, and the parties' submissions. For the reasons stated below, the Court finds that neither the February 20 Discovery Order nor the March 12 Discovery Order is clearly erroneous nor contrary to law. Accordingly, Defendants' objections are denied, and Judge Bloom's February 20 Discovery Order and March 12 Discovery Order are affirmed.

## BACKGROUND

### I. Factual Background

The facts relevant to the present dispute are as follows. Plaintiff alleges that, on July 17, 2023, she and her husband went to her neighbor's home to complain about loud and incessant construction noise. (ECF No. 33, Amended Compl. "Am. Compl." ¶ 30.) Plaintiff further alleges that a verbal altercation ensued, in which her neighbor, Alysa Andrade ("Andrade"), threatened to physically assault and kill her. (*Id.* ¶ 31.) Plaintiff alleges that Andrade also remarked that she knew NYPD personnel and would have them arrest Plaintiff. (*Id.*) Shortly thereafter, NYPD units arrived and arrested Plaintiff. (*Id.* ¶ 38.) Defendants' body-worn camera footage from the day of the incident captured Andrade's sister stating that she had just gotten off the phone with her father, an NYPD Captain. (February 20 Discovery Order at 15:25-16:6.) Plaintiff further alleges that, following her unlawful

2

arrest and ensuing confinement, she was subject to an invasive cavity search by Officer Caldararo. (Am. Compl. ¶ 45.) During Caldararo's deposition, she testified that she received a call from a Sergeant on either her personal cell, NYPD-issued cell, or radio, assigning her to search Plaintiff. (ECF No. 57-1 at 97; ECF No. 62 at 4.) When asked to identify who the call came from, Caldararo stated that she believed it was either Sergeant Falzarano or Sergeant Campanella. (ECF No. 57-1 at 98-99.)

## II. Procedural History

According to Plaintiff's request seeking leave to serve additional interrogatories (ECF No. 42), Plaintiff's initial complaint, filed on July 11, 2024, had misidentified the officers who were allegedly involved in her arrest and cavity search. Plaintiff was then granted leave by Judge Bloom to file an amended complaint on November 8, 2024, to name the officers involved. (*See* November 6, 2024, Order of Magistrate Judge Bloom.) Plaintiff argued that, due to her initial misidentification, Plaintiff's initial set of interrogatories directed to the misidentified officers was now partially obsolete. (ECF No. 42 at 1-2.) Plaintiff further noted that additional discovery was warranted because of her recent discovery as to the complaining witness's, Andrade's, family ties with the NYPD. (*Id.*) In particular, Plaintiff identified Andrade's (1) father, an NYPD Captain, (2) sister, an NYPD Sergeant once assigned to the precinct where

3

Plaintiff was held following her arrest, and (3) brother-in-law, an NYPD Detective.  (ECF No. 70 at 1-2.)  Further, the officer who responded to Andrade's complaint, Sergeant Falzarano, may have called Officer Caldararo, who conducted the cavity search of Plaintiff.  (*Compare* Objection at n.1 (noting that "Sgt. John Falzarano arrived at the scene of the incident and called [Andrade] to come out of her residence to meet him.") *with* ECF No. 57-1 at 98 (Officer Caldararo's testimony that she was called to search Plaintiff by either Sergeant Falzarano or Sergeant Campanella).)  Plaintiff sought leave to serve 14 additional interrogatories and to renew two previously served interrogatories which had not been answered.[1]  (*Id.*)

At issue in Defendants' instant objections is Interrogatory 14, which provides:

> For each named defendant, identify any and all associated phone numbers, including, but not limited to, department-issued cell phone, personal cell phone, office phone, and home phone numbers.

(ECF No. 42-4 at 4.)  Plaintiff's request for this additional interrogatory was based in part on Defendants' body-worn camera video footage during Plaintiff's altercation with Andrade, which contains audio from Andrade's sister stating that she just got off the phone with her father, the NYPD Captain.  (*See* February 20

---

[1] Plaintiff also submits that, of the 16 additional interrogatories that she sought to serve, 6 were merely updated from prior interrogatories with the correct parties identified.  (ECF No. 42 at 3.)

4

Discovery Order at 16:1-6.)  In addition, a body-worn camera captured Officer Caldararo speaking excitedly with the officers at the precinct prior to the alleged cavity search of Plaintiff. (*Id.* at 14-15.)

In response to Plaintiff's request for leave to serve additional interrogatories, Defendants concede that Andrade's father, sister, and brother-in-law indeed serve in the NYPD, but nevertheless argue that Plaintiff had not met her burden of a "particularized showing" that the benefit of discovery outweighs the potential burden on the responding party. (ECF No. 43 at 1.) Defendants argue that Plaintiff has "no basis for more discovery" and, given the amount of discovery already undertaken, additional interrogatories and discovery requests would be unduly burdensome. (*Id.* at 1-2.)  Defendants further object specifically as to Interrogatories 12 and 13 for lack of relevance.  (*Id.* at 2.) Notably, Defendants make no specific objections or arguments as to Interrogatory 14, the subject of their instant Objection.

On February 20, 2025, having reviewed the parties' respective submissions, Magistrate Judge Bloom held a conference on, *inter alia*, additional interrogatories. (*See* ECF No. 45, the "February 20 Discovery Order.")  Both parties were provided an opportunity to be heard at the February 20 conference. (*See id*. at 2:17-3:15; 19:9-11.)  At the February 20 conference, Judge Bloom narrowed Plaintiff's request, denying Plaintiff leave to serve

5

Interrogatories 9, 10, 11, 15, and 16, and granting leave to serve the remainder. (*Id.* at 18:14-19:2.) As stated on the record, Judge Bloom denied leave to serve certain of the Interrogatories because "nonparties should not be subject to the same amount of scrutiny as the [named parties]." (*Id.* at 5:14-21.) As to the phone numbers of the named defendants, Judge Bloom directed any disclosure of phone numbers to be subject to the confidentiality order and designated as Attorneys' Eyes Only. (*Id.* at 18:22-19:2.) Judge Bloom ultimately ordered Defendants to respond to Plaintiff's interrogatories by March 7, 2025. (*Id.* at 14:15-20.) Throughout the conference, Defendants did not raise any specific objections or arguments as to Interrogatory 14, despite Judge Bloom specifically asking both counsel if they wished to raise other issues. (*See id.* at 19:9-11.)

On March 5, 2025, Defendants filed a motion for reconsideration of Judge Bloom's February 20, 2025, order on Interrogatory 14. (ECF Nos. 48, 49.) Defendants' sole argument on reconsideration is that they were denied an opportunity to interpose objections as to Interrogatory 14. (*See* ECF No. 49 at 1-4.) Defendants argue that, if they were permitted to object, they would have objected on the grounds that: (1) Plaintiff's basis for seeking defendants' phone numbers is overly speculative; (2) disclosure of the phone numbers of defendant officers is "normally off limits in civil rights litigation;" and (3) disclosure of the

6

phone numbers is "protected by the official information privilege." (*Id.* at 2-3.)

On March 7, 2025, Defendants served a partial response to Plaintiff's second set of interrogatories, lodging objections to six out of the eleven interrogatories that Judge Bloom had permitted. (*See generally* ECF No. 70-1.) They did not assert the official information privilege to Interrogatory 14, much less make a showing of that privilege.

On March 12, 2025, while Defendants' motion for reconsideration on Interrogatory 14 was pending, Plaintiff deposed Officer Caldararo. Officer Caldararo testified at her deposition to receiving a call to come to the station to search Plaintiff. (*See* ECF No. 55, the "March 12 Discovery Order" at 2:23-3:18.) When Plaintiff asked Officer Caldararo to provide her phone number during her deposition, Defendants objected and the parties called Judge Bloom's chambers for a ruling on the objection. However, Judge Bloom was not available at that moment and reached the parties shortly after the witness and court reporter were excused. (*Id.*) Defendants argued that permitting Plaintiff to ask Officer Caldararo for her number would render their motion for reconsideration moot before a decision could be rendered. (*Id.* at 3:20-4:3.) Judge Bloom permitted Officer Caldararo to abstain from answering the deposition question regarding her phone number, and instead directed defense counsel to search for and produce the

7

phone record of the call at issue. (*Id.* at 4:22-5:10.) Judge Bloom directed that, after obtaining the record of this call, Defendants were to produce the record of the call or text. (*Id.* at 7:20-8:5.)

On March 24, 2025, Defendants filed a motion for reconsideration of Judge Bloom's March 12 Discovery Order, directing Defendants to search and produce the record of the call assigning Officer Caldararo to search Plaintiff. (ECF No. 58.) Defendants argue, much like they did previously and again do here, that the only issue presented for Judge Bloom's consideration was the objection on the deposition question. (*See id.* at 2-3.) Defendants also argue that discovery was unnecessary because "all that the phone records would show anyway is that a phone call was placed to assign P.O. Caldararo" to search Plaintiff. (*Id.*)

On March 28, 2025, Judge Bloom denied Defendants' motion for reconsideration on Interrogatory 14, having found "no new matter" to alter the Court's prior order. (ECF No. 62 at 5.) Judge Bloom also noted that Defendants miscite this Court's decision in *Fowler-Washington v. City of New York*, No. 19-cv-6590 (KAM)(JO), 2020 WL 5893817, at n.4 (E.D.N.Y. Oct. 5, 2020), as support for the proposition that telephone numbers are "normally off limits in civil rights litigation[.]" (ECF No. 62 at 5.)

In that same order, Judge Bloom denied in part and granted in part Defendants' motion for reconsideration on the search and

8

production of Officer Caldararo's call record. Because the parties initially disputed whether Officer Caldararo had received the assignment to search Plaintiff through a phone call or a text message, Judge Bloom had ordered the production of either the call records or the text message, depending on what Officer Caldararo testified to. On reconsideration, Judge Bloom reviewed the deposition transcript where Officer Caldararo testified to receiving a call and not a text. Judge Bloom accordingly granted partial reconsideration vacating her order regarding text messages, but denied reconsideration as to Defendants' obligation to produce phone call records. (*Id.* n.2.)

On April 7, 2025, Defendants filed their objections to Judge Bloom's February 20 Discovery Order and March 12 Discovery Order (ECF No. 69), asserting the same arguments made in Defendants' motions for reconsideration. (*See* ECF Nos. 48, 56.) The Court now considers Defendants' Objections.

## DISCUSSION

### I. Standard of Review

Under Federal Rule of Civil Procedure 72(a), a district court may set aside a magistrate judge's order concerning non-dispositive matters only if the order is "clearly erroneous or contrary to law." Fed R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). An order is clearly erroneous if the reviewing court, based on all the evidence, "is left with the definite and firm conviction that

9

a mistake has been committed." *United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure."  *Dorsett v. Cnty. of Nassau*, 800 F. Supp. 2d 453, 456 (E.D.N.Y. 2011) (quoting *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002)).

A magistrate judge's pretrial discovery rulings are generally considered non-dispositive and are reviewed under the "clearly erroneous or contrary to law" standard of review.  *See Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (finding that matters involving pretrial discovery are generally considered "'nondispositive' of the litigation" and thus are subject to the "clearly erroneous or contrary to law standard" on review by a district court).  "Pursuant to this highly deferential standard of review, magistrate[] [judges] are afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused."  *Schwartz v. Metro. Prop. & Cas. Ins. Co.*, 393 F. Supp. 2d 179, 181 (E.D.N.Y. 2005).  Thus, "'a party seeking to overturn a discovery ruling [by a magistrate judge] generally bears a heavy burden.'"  *Travel Sentry, Inc. v. Trop*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009) (quoting *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1099 (E.D.N.Y. 1990)).

10

In reviewing objections to a magistrate judge's ruling, "[c]ourts generally do not entertain new legal arguments not presented to the magistrate judge." *Anderson v. Phoenix Beverage Inc.*, No. 12-cv-1055 (DLI)(RML), 2015 WL 737102, at *3 (E.D.N.Y. Feb. 20, 2015) (collecting cases). Courts are similarly confined to the factual record presented to the magistrate judge while reviewing a magistrate judge's non-dispositive rulings to determine whether they were clearly erroneous or contrary to law. *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) ("Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge.").

**II. Defendants' Objections to the February 20 Discovery Order**

Defendants object to Judge Bloom's February 20 Discovery Order directing them to respond to Interrogatory 14 with the named defendants' phone numbers for "attorneys' eyes only." Defendants assert, without citation to any authority, that Judge Bloom abused her discretion by directing them to respond without asserting objections. (Objection at 7.) The Court disagrees.

Though litigants routinely serve responses and objections to interrogatory requests, any asserted objections merely defer the obligation to answer until after the objection is ruled on. *See* Fed. R. Civ. P. 33 advisory committee's note to 1946 amendment (noting that "only the answers to the objectionable

11

interrogatories may be deferred" until objections are determined). Here, Judge Bloom adequately considered whether Plaintiff's proposed interrogatories were objectionable during the February 20, 2025, conference. (*See* February 20 Discovery Order at 18:14-19:2.) Not only did Judge Bloom hear from both counsel, but she also asked counsel if they wished to be heard on anything else before she concluded. (*Id.* at 19.) Judge Bloom's admonishment, that counsel for Defendants refrain from lengthy objections and instead respond, is thus neither clearly erroneous nor contrary to law. Indeed, Judge Bloom noted that defense counsel had impeded the progress of discovery. (*Id.* at 5-6.) *See Shim-Larkin v. City of New York*, No. 16-cv-6099 (AJN), 2022 WL 1250548, at *3 (S.D.N.Y. Apr. 27, 2022) (finding magistrate judge's order to "respond without asserting any objections" and subsequent order imposing sanctions when defendant interposed objections to be neither clearly erroneous nor contrary to law).

Defendants' arguments as to the privacy interests of the named defendants and the application of the official information privilege are similarly without merit.[2] (*See* Objection at 8-9.) As Judge Bloom noted, the privacy interests of non-parties in civil

---

[2] Defendants' citation to this Court's decision in *Fowler-Washington v. City of New York*, No. 19-cv-6590 (KAM)(JO), 2020 WL 5893817, at *4 (E.D.N.Y. Oct. 5, 2020), does not support their assertion that phone numbers are "normally off limits in civil rights litigation." (ECF No. 69 at 8.) As this Court noted in *Fowler-Washington*, phone numbers *may* be appropriately produced for attorneys' eyes only, as Judge Bloom ordered here. *Fowler-Washington*, 2020 WL 5893817, at *4.

12

discovery differ from that of the named defendants. (February 12 Discovery Order at 17:3-19:2.) Moreover, a defendant's expectation of privacy may be outweighed by Plaintiff's interest in learning the sought information. *See Rotten Records, Inc. v. Doe*, 107 F. Supp. 3d 257, 259 (W.D.N.Y. 2015) ("Plaintiff's interest in learning Defendant's name and address outweighs Defendant's privacy interest.") Defendants provide no authority stating that the disclosure of their work and personal phone numbers on an Attorneys' Eyes Only basis unduly burdens their privacy interests or infringes on any official information privilege.[3]

To the extent that Defendants argue that they have not had an "opportunity" to object, that contention is unsupported by the record. (Objection at 7.) First, in Defendants' opposition to Plaintiff's motion for leave to serve additional interrogatories, Defendants specifically object to Interrogatories 12 and 13 on grounds of relevance. (ECF No. 43 at 2.) Defendants' decision not to object to Interrogatory 14 at that time, despite objecting to other interrogatories, does not plausibly support their

---

[3] Defendants, the party seeking to invoke the official information privilege, "bears the burden of justifying its application." *King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988). To assert a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims against a police defendant, "the officers or the police department must do more than alert the court to the state privilege law or the generalized polices which support it. The police must make a 'substantial threshold showing,' . . . that there are specific harms likely to accrue from disclosure of specific materials[.]" *Id.* (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 655-59 (N.D. Cal. 1987)). Defendants have made no such showing here.

13

argument that they were deprived of any opportunity to object. Second, Defendants could have raised similar objections during the February 20 conference with Judge Bloom. At the outset, Judge Bloom asked the parties if there was anything outside the briefing that the parties wished to be heard on. (February 20 Discovery Order at 3:4-14.) Defendants again did not object to Interrogatory 14. Nor did Defendants raise any objections to Interrogatory 14 when Judge Bloom challenged Plaintiff's similar interrogatories for phone numbers of non-parties, or asked the parties at the end of the conference if they wished to raise any other matters. (*Id.* at 19:9-11.) Defendants had multiple opportunities to object yet failed to do so. Accordingly, the Court finds that Judge Bloom's thoughtful February 20 Discovery Order is neither clearly erroneous nor contrary to law.

**III. Defendants' Objections to the March 12 Discovery Order**

Defendants object to Judge Bloom's March 12 Discovery Order directing them to search for and produce the record of the call made to Officer Caldararo directing her to search Plaintiff after her arrest. Defendants argue that, "Judge Bloom misapplied the law by ordering invasive phone record searches without considering the speculative nature of the discovery sought." (Objection at 5.) The Court disagrees that the disputed discovery is speculative.

As a threshold matter, Federal Rule of Civil Procedure

14

26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy "is an extremely broad concept" and needs only be "reasonably calculated to lead to the discovery of admissible evidence." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004)). Thus, the Rule 26(b)(1) standard presents a "'relatively low threshold' for a party to show that the material sought is relevant to any claim or defense in the litigation." *Id.* (quoting *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007)).

With these principles in mind, the Court concludes that Defendants failed to carry their "heavy burden" that Judge Bloom issued a decision that abused her discretion or was contrary to law. *See New Falls Corp. v. Soni*, No. 18-cv-2768 (SJF)(AKT), 2021 WL 878742, at *2 (E.D.N.Y. Mar. 8, 2021) (Federal Rule of Civil Procedure 72(a) "imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [his or her] discretion." (internal quotations omitted)). Plaintiff's allegations revolve, in part, on a theory that Plaintiff's neighbor, Andrade, had made good on her threat to utilize her connections within the NYPD to facilitate Plaintiff's unlawful arrest and cavity search. (*See* Am. Compl. ¶ 31.) Through discovery, Plaintiff identified Andrade's father, sister, and

15

brother-in-law to all work for the NYPD.  (*See* ECF No. 43; ECF No. 62 at n.1.)  Though Plaintiff does not allege that any of Andrade's family members arrested or searched her, body-worn camera footage showed Andrade's sister on the phone with her father, an NYPD Captain, near the time of Plaintiff's arrest.  (ECF No. 62 at 2.)  And at Officer Caldararo's deposition, she testified to receiving a call from someone else directing her to come into the station to search Plaintiff.  (March 12 Discovery Order at 2:23-3:18.)  Body camera footage further shows that Officer Caldararo conferred with two other officers in an excited manner at the precinct just prior to the alleged cavity search of Plaintiff.  (February 20 Discovery Order at 14:24-15:8.)  Records of Caldararo's phone activity are undoubtedly relevant to Plaintiff's case and likely to lead to other evidence.  Defendants do not dispute otherwise.

Defendants instead argue that evidence of a call is not "nefarious" enough to "justif[y] invasive phone record searches." (Opposition at 5-6.)  The Federal Rules – and indeed, the law – does not limit discovery to "nefarious" acts.  The standard for discovery is simply whether it is relevant, not privileged, and reasonably calculated to lead to the discovery of relevant evidence.  The evidence need not be incriminating to be probative, and Defendants have not shown that Judge Bloom's March 12 Discovery Order is clearly erroneous or contrary to law.  Accordingly, Defendants' objections as to Judge Bloom's March 12 Discovery Order

16

are denied.

## CONCLUSION

For the foregoing reasons, Defendants' objections are **DENIED**. The Court notes that Defendants have been on notice of Interrogatory 14 since January 24, 2025, when Plaintiff served them via email. (ECF No. 42 at 2.) The Court will not tolerate any further delays in making court-ordered productions. Accordingly, Defendants are hereby directed to comply in full with Judge Bloom's February 20 Discovery Order and March 12 Discovery Order by no later than May 5, 2025, or risk sanctions before this Court.

**So ordered.**

Dated:  April 28, 2025
        Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York