United States District Court
Eastern District of New York

-----------------------------------X

Deborah Intorcia,

               *Plaintiff*,              **Memorandum and Order**

   - against -                No. 24-cv-4837 (KAM) (SDE)

City of New York, et al.,

               *Defendants*.

-----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

       Pending before the Court is a motion for partial summary judgment filed by all defendants. (ECF Nos. 118-121.) Plaintiff Deborah Intorcia asserts 15 civil rights claims, under federal and state law, against the City of New York and six officers of the New York City Police Department ("NYPD") – specifically, Sergeant Gregory Acerra, Officer Kristen Caldararo, Sergeant Louis Campanella, Sergeant John Falzarano, Officer Christopher Ng, and Officer Ryan Stam. (ECF No. 33.) The sole claim for which Defendants do <u>not</u> seek summary judgment is Plaintiff's federal claim for unconstitutional search (Claim 11) against Ofc. Caldararo. (ECF No. 121 at 12.[1]) For the reasons discussed below, Defendants' motion for partial summary judgment is GRANTED IN PART and DENIED IN PART.

---

[1] Unless otherwise noted, pincites refer to the page number generated by CM/ECF.

## BACKGROUND

### I.    Factual Background

Given the voluminous evidentiary record in this case, the Court will focus its recitation of the facts on only those relevant to the resolution of the pending motion.  Plaintiff's claims arise from two critical events: *first*, the responding officers' decision to arrest Plaintiff, and *second*, Ofc. Caldararo's search of Plaintiff in the bathroom of the police precinct.  Each is discussed in turn.  When possible, the Court relies upon bodyworn camera ("BWC") video footage to ascertain the relevant facts.  *See Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that, if video footage of the events at issue exists, the Court must "view[] the facts in the light depicted by the videotape").[2]

### A.    Plaintiff's Arrest

#### 1.    The Construction Noise Dispute

This action arises from a construction noise dispute on July 17, 2023 between neighbors in Staten Island and the subsequent police response.  Unless otherwise noted, the following facts are deemed undisputed based on the parties' submissions.  Internal quotations are omitted from quotations of the parties' statements of undisputed material facts submitted in accordance with Local

---

[2] For citations to BWC, the Court will identify the officer whose BWC is cited and rely on the timestamp provided in the BWC footage (in military time) at the top right corner of the screen.

Civil Rule 56.1.

Plaintiff Deborah Intorcia and her husband Frank Intorcia (together "the Intorcias") resided next door to Alysa Andrade[3] who was having construction done on her house. (ECF No. 122-1 ("56.1 Counterstatement") ¶¶ 1-3.) Plaintiff claims – and Defendants dispute – that loud construction noise was coming from Alysa Andrade's home for most of the day. (ECF No. 127 ("56.1 Reply") ¶ 95.) At 7:52 PM on July 17, 2023, Alysa Andrade called 911 and told the operator that one of her neighbors had come onto her property without her permission and threatened her. (*Id.* ¶ 96; 56.1 Counterstatement ¶¶ 6-7,9.) The 911 operator told Alysa Andrade that the police would be there as soon as possible. (*Id.* ¶ 10.)

### 2.    The Police Response

#### a.    Alysa Andrade's Statements to NYPD Officers

After the 911 call, defendant Sgt. Falzarano and non-party Ofc. Kevin Padilla responded to the scene. (*Id.* ¶ 11.) As shown in Ofc. Padilla's BWC video footage, the officers approached Alysa Andrade's house at 8:05 PM on July 17, 2023, in broad daylight and with full visibility.[4] (ECF No. 123-3, Ofc. Padilla's

---

[3] Given that multiple members of the Andrade family are referenced in the parties' submissions, the Court will refer to Alysa and Anessa Andrade by their full names.

[4] The Court relies on video footage from Ofc. Padilla's BWC, which clearly captured the officers' on-scene investigation, including interactions with Plaintiff and members of the Andrade family, conducted during daylight. (*See* ECF No. 123-3, Ofc. Padilla's BWC ("Padilla BWC").)

BWC ("Padilla BWC"), 8:05:00 PM.)  Alysa and her sister Anessa Andrade told the officers, who stood on the sidewalk, that their house was under construction and that a contractor was working on their bathroom.  (Padilla BWC 8:05:15 to 8:05:40 PM.)  Alysa Andrade then told officers that the Intorcias had come onto her backyard and started yelling at her sister Anessa Andrade and Anessa Andrade's boyfriend.  (Padilla BWC 8:05:50 to 8:06:00 PM.)  Alysa Andrade told officers that she (Alysa Andrade) then came to the yard and spoke to the Intorcias who appeared very upset about the construction noise.  (Padilla BWC 8:06:00 to 8:06:12 PM; 56.1 Counterstatement ¶ 18.)  Alysa Andrade told officers that she (Alysa Andrade) told Plaintiff, "No, you need to get off my property."  (Padilla BWC 8:06:12 to 8:06:15 PM.)  Alysa Andrade then told officers that Plaintiff would not leave her property and that Plaintiff made disparaging comments about the construction workers "being Mexican."  (Padilla BWC 8:06:15 to 8:06:20 PM; 56.1 Counterstatement ¶ 19.)  Alysa Andrade told officers that she (Alysa Andrade) then said to Plaintiff to "get out" and that, instead of complying, Plaintiff "gets in [Alysa Andrade's] face and starts yelling" insults and threats, including that Plaintiff stated that she was going to "fuckin' kill" Alysa and Anessa Andrade.  (Padilla BWC 8:06:20 to 8:06:30 PM; 56.1 Counterstatement ¶¶ 21-22.)  At this point, as Alysa Andrade was in the process of relaying her version of events to the officers, the Intorcias

4

walked up to the scene on the sidewalk.  (Padilla BWC 8:06:30 to 8:06:40 PM.)

### b.   The Intorcias' Statements to NYPD Officers

The officers then asked Plaintiff what happened, to which Plaintiff, who initially did not stop walking, responded, "Nothing. Goodnight." (Padilla BWC 8:06:37 to 8:06:41 PM.)  Soon thereafter, however, the Intorcias stopped and spoke with the officers.  The Intorcias did not dispute that they intentionally went onto Alysa Andrade's fenced yard, and instead attempted to downplay the trespass as insignificant.  Mr. Intorcia told Ofc. Padilla that they had only come three feet onto Alysa Andrade's property, and Ms. Intorcia told Ofc. Padilla that "the gate was open." (Padilla BWC 8:07:02 to 8:07:32 PM.)  Mr. Intorcia then admitted to Ofc. Padilla, "It was wrong. We shouldn't have done that." (Padilla BWC 8:07:33 to 8:07:36 PM.)  Ofc. Padilla then asked Plaintiff, "Did you go to their yard?" (Padilla BWC 8:07:40 to 8:07:41 PM.)  Plaintiff responded, "Yeah, I did." (Padilla BWC 8:07:41 to 8:07:42 PM.)  Ofc. Padilla then asked Plaintiff, "Were you allowed to go their yard?" (Padilla BWC 8:07:43 to 8:07:45 PM.)  Plaintiff shook her head and responded, "No." (Padilla BWC 8:07:45 PM.)  Later, in relevant part, Alysa Andrade reiterated to the officers, "I asked [Ms. Intorcia] to leave while [Ms. Intorcia] was still on my property. She did not leave." (Padilla BWC 8:09:48 to 8:09:52 PM.)  Soon after hearing the version of events as

presented by Alysa Andrade and the Intorcias, officers decided to arrest Plaintiff, and Ofc. Padilla handcuffed Plaintiff. (Padilla BWC 8:10:59 to 8:11:20 PM.)

**B.    Ofc. Caldararo's Search of Plaintiff in the Precinct Bathroom**

After her arrest, Plaintiff was transported to the 122nd Precinct by Officers Ng and Stam. (56.1 Counterstatement ¶ 66.) Ofc. Ng, Ofc. Stam, and Plaintiff arrived at the precinct at 8:34 PM, approximately 23 minutes after Plaintiff was handcuffed. (ECF No. 120-6, Ofc. Stam's BWC ("Stam BWC"), 8:34:00 PM.) There is no evidence that Plaintiff was searched at any point prior to her arrival at the precinct. (ECF Nos. 114-115.)

Officers Ng and Stam brought Plaintiff to the counter at the precinct before Sgt. Campanella, the desk officer on duty. (Stam BWC 8:36:00 PM.) The video shows that Plaintiff was agitated and uncooperative. Plaintiff refused to spell her last name ("I'm not spelling it") and repeatedly interrupted Sgt. Campanella as he attempted to explain to her the consequences of her decision. (Stam BWC 8:36:00 to 8:37:12 PM.) During the conversation, Plaintiff invoked her status as a local business owner by telling the officers, "I have four business like up the street, so you probably all know me anyway." (Stam BWC 8:39:05 to 8:39:05 PM.) Plaintiff then invoked her connections to NYPD officers by asking the officers, "Is Detective Oswald here?" (Stam BWC 8:39:38 to

6

8:39:41 PM.)  An officer responded, "Dunno. We'll find out for you."  (Stam BWC 8:39:42 to 8:39:45 PM.)  Plaintiff continued, "He's a friend of mine... not saying he can do anything, but like I can cry on his shoulder... I'll just cry on him."  (Stam BWC 8:39:45 to 8:39:52 PM.)  Sgt. Campanella then explained to Plaintiff that they would wait for a female officer to arrive to conduct a search and that she would remain handcuffed until then. (Stam BWC 8:40:30 to 8:39:48 PM.)

Upon hearing that she would be searched, Plaintiff grew angry at Sgt. Campanella: "Search me?  I don't have anything on. I'm not being searched.  There's no reason why I should be searched. Why you searching me?  Seriously... yeah I'm not being searched.  I deny it."  (Stam BWC 8:40:45 to 8:41:01 PM.) Approximately a minute later, officers took Plaintiff to a secure part of the precinct with a bench facing a holding cell (occupied by a male inmate) to the left and a bathroom to the right.  (Stam BWC 8:42:00 PM.)  While she was sitting on the bench next to Officers Ng and Stam, Plaintiff told the male inmate in the holding cell, "Go back to sleep. Why are you up?"  (Stam BWC 8:42:46 to 8:42:50 PM.)  Officer Ng then told Plaintiff, "Can you not?"  (Stam BWC 8:42:50 PM.)  Plaintiff responded to Officer Ng, "He's staring. I have the right."  (Stam BWC 8:42:53 to 8:42:55 PM.)  Plaintiff then had casual conversation with the officers for nearly five more minutes until 8:47 PM when Ofc. Caldararo arrived to conduct

a search of Plaintiff. (Stam BWC 8:47:30 PM.)

Ofc. Ng introduced Plaintiff to Ofc. Caldararo, a female officer, and explained to Plaintiff that Ofc. Caldararo would be doing the search. (Stam BWC 8:47:33 to 8:47:36 PM.) Ofc. Caldararo, who was wearing blue medical gloves, asked Plaintiff if she had anything on her that she should not have, such as "anything sharp" or "drugs." (Stam BWC 8:47:44 to 8:47:49 PM.) Plaintiff, who was wearing a long and loose-fitting green dress, said no and confirmed that she was not wearing a bra or underwear because she "just got out of the shower." (Stam BWC 8:47:49 to 8:47:55 PM.) Officers Ng and Caldararo then removed the handcuffs from Plaintiff's hands. (Stam BWC 8:48:03 PM.) Plaintiff removed a bracelet she was wearing on her ankle. (Stam BWC 8:48:43.) At approximately 8:49:04 PM, Ofc. Caldararo and Plaintiff entered the bathroom, the door closed, and the search began. (ECF No. 120-10, Ofc. Caldararo's BWC ("Caldararo BWC"), 8:49:04 PM.) Ofc. Caldararo removed her bodyworn camera and placed it on a table with the camera lens facing the bathroom door and continuing to record. (*Id.*) Approximately 42 seconds later, at 8:49:46 PM, Ofc. Caldararo opened the bathroom door and walked out with Plaintiff behind her. (Caldararo BWC 8:49:46 PM.) Ofc. Caldararo, still with her gloves on, used her right hand to push the bathroom door open and held what appears to be a white hairband in her left hand. (Caldararo BWC 8:49:46 to 8:49:50 PM.) She then used her

right hand to pick up her bodyworn camera and place it back onto her uniform. (Caldararo BWC 8:49:56 PM.) She then used her right hand to place the hairband into a glove Ofc. Stam held open. (Caldararo BWC 8:50:08 PM.) Ofc. Caldararo then sighed and said to Plaintiff, "Alright Miss, good luck with everything, okay?" (Caldararo BWC 8:50:10 to 8:50:12 PM.) Plaintiff, responded, "Thank you." (Caldararo BWC 8:50:13 PM.) Ofc. Caldararo replied, "You're welcome." (Caldararo BWC 8:50:14 PM.) She then removed her gloves and turned off the bodyworn camera. (Caldararo BWC 8:50:15 PM.)

     **C. Plaintiff's Criminal Charges**

     Plaintiff was initially arrested on four New York state criminal offenses: (i) criminal trespass in the third degree in violation of N.Y. Penal Law §140.10(A); (ii) trespass in violation of N.Y. Penal Law §140.05; (iii) disorderly conduct in violation of N.Y. Penal Law §240.20(6); and (iv) harassment in the second degree in violation of N.Y. Penal Law §240.26(3). (ECF No. 123-1, NYPD Arrest Form, at 1.) Plaintiff was ultimately charged with only two of the offenses: (i) criminal trespass in the third degree in violation of N.Y. Penal Law §140.10(A); and (ii) trespass in violation of N.Y. Penal Law §140.05. (ECF No. 123-5 at 9.)

     According to Plaintiff, she was arraigned in handcuffs the day after her arrest (July 18, 2023), pleaded not guilty, and released on her own recognizance. (ECF No. 33 ¶ 55.) Plaintiff

claims she was required to appear in court on August 23, 2023 and October 23, 2023 – before her charges were dismissed on December 14, 2023. (*Id.* ¶¶ 58-59, 62.)

## II.  Procedural Background

Plaintiff filed her original complaint in this action on July 11, 2024, (ECF No. 1), and later an amended complaint on November 8, 2024, (ECF No. 33 ("Am. Complaint")).  Below is a summary table of the claims Plaintiff asserts in her amended complaint:

| Claim | State or Federal | Nature of Claim | Defendants |
|-------|------------------|-----------------|------------|
| 1 | State | Malicious prosecution | Stam, Ng, Falzarano |
| 2 | Federal | Malicious prosecution | Stam, Ng, Falzarano |
| 3 | Federal | Evidence fabrication | All individual defendants[5] |
| 4 | Federal | Failure to intervene | All individual defendants |
| 5 | State | Abuse of process | All defendants |
| 6 | Federal | Abuse of process | All defendants[6] |
| 7 | Federal | Civil conspiracy | All individual defendants |
| 8 | State | False arrest | City of New York, Stam, Ng, Falzarano |
| 9 | Federal | False arrest | Stam, Ng, Falzarano |
| 10 | State | False imprisonment | All defendants |
| 11 | Federal | Unconstitutional search | All defendants[7] |
| 12 | Federal | Excessive force | All defendants[8] |
| 13 | State | Assault and battery | City of New York, Caldararo |
| 14 | State | Negligent Infliction of Emotional Distress ("NIED") | All defendants |
| 15 | State | Negligent hiring, training, and supervision | City of New York |

On December 3, 2024, Defendants filed an answer to the amended complaint. (ECF No. 41.) On August 21, 2025, the Court held a

---

[5] Plaintiff is inconsistent in her use of the terms "all Defendants" and "the Individual Defendants." (Am. Complaint at 33.) The only non-individual defendant is the City of New York, and the City is not a proper defendant for the evidence fabrication claim. "[A] plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). "[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

[6] Plaintiff incorrectly brings claims against "All Defendants" despite the Section 1983 abuse of process claim, as alleged, being ineligible for municipal liability. *See supra* n.5.

[7] Plaintiff incorrectly brings claims against "All Defendants" despite the Section 1983 unconstitutional search claim, as alleged, being ineligible for municipal liability. *See supra* n.5.

[8] Plaintiff incorrectly brings claims against "All Defendants" despite the Section 1983 excessive force claim, as alleged, being ineligible for municipal liability. *See supra* n.5.

pre-motion conference in anticipation of Defendants' motion for partial summary judgment. (*See* Minute Entry dated August 21, 2025.) The parties' fully-briefed papers for Defendants' motion for partial summary judgment were filed on November 18, 2025.

## LEGAL STANDARD

### I.   Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Alberty v. Hunter*, 144 F.4th 408, 414 (2d Cir. 2025). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis in original). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome

12

of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"The role of the district court on summary judgment is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (citation modified). "A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation modified); *see also Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 68 (2d Cir. 2024) ("Generally, speculation by the party resisting the motion will not defeat summary judgment.") (internal quotations omitted).

Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 322-23 (internal quotations omitted). "The moving party is entitled to a judgment as a matter of law

because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323 (internal quotations omitted).

## II. Section 1983 Claims

Plaintiff's federal claims are brought pursuant to 42 U.S.C. § 1983. Under Section 1983,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983. "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012). Section 1983 "does not confer any substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Village of Freeport v. Barrella*, 814 F.3d 594, 600 n.8 (2d Cir. 2016) (citation modified).

"To state a claim under § 1983, [the plaintiff] [i]s required to plausibly allege that '(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.'" *Flynn v. James*, 513 F. App'x 37, 39 (2d Cir. 2013) (summary order) (quoting *Snider v. Dylag,* 188 F.3d 51, 53 (2d Cir. 1999)).

## DISCUSSION

For the reasons discussed below, the Court GRANTS Defendants summary judgment on the following claims:

- **Claim One** (state malicious prosecution claims against defendants Falzarano, Ng, and Stam)
- **Claim Two** (federal malicious prosecution claims against defendants Falzarano, Ng, and Stam)
- **Claim Three** (federal evidence fabrication claim against all individual defendants)
- **Claim Four** (federal failure to intervene claim against all individual defendants)
- **Claim Five** (state abuse of process claim against all defendants)
- **Claim Six** (federal abuse of process claim against all defendants)
- **Claim Seven** (federal civil conspiracy claim against all individual defendants)
- **Claim Eight** (state false arrest claim against defendants City of New York, Falzarano, Ng, and Stam)
- **Claim Nine** (federal false arrest claim against defendants Falzarano, Ng, and Stam)
- **Claim Ten** (state false imprisonment claim against all defendants)
- **Claim Eleven** (federal unconstitutional search claim against all defendants except defendant Caldararo)
- **Claim Twelve** (federal excessive force claim against all defendants except defendant Caldararo)
- **Claim Fourteen** (state negligent infliction of emotional distress claim against all defendants except defendants Caldararo and City of New York)
- **Claim Fifteen** (state negligent hiring, training, and supervision claim against the City of New York)

Plaintiff's surviving claims for trial are therefore:

- **Claim Eleven** (federal unconstitutional search claim against defendant Caldararo[9])
- **Claim Twelve** (federal excessive force claim against defendant Caldararo)

---

[9] Ofc. Caldararo did not move for summary judgment on this claim. (ECF No. 121 at 12.)

- **Claim Thirteen** (state assault and battery claims against defendants Caldararo and City of New York)
- **Claim Fourteen** (state negligent infliction of emotional distress claim against defendants Caldararo and City of New York)

In the discussion below, the analysis of certain claims will be grouped when the viability of such claims is predicated on the same issue of law or fact.[10]

## I. False Arrest, False Imprisonment, and Malicious Prosecution (Claims One, Two, Eight, Nine, and Ten)

As discussed below, the existence of probable cause to arrest and prosecute Plaintiff warrants summary judgment in favor of Defendants on Plaintiff's state malicious prosecution claim (Claim One), federal malicious prosecution claim (Claim Two), state false arrest claim (Claim Eight), federal false arrest claim (Claim Nine), and state false imprisonment claim (Claim Ten).

### A. Probable Cause

The Court will analyze probable cause to <u>arrest</u> and probable cause to <u>prosecute</u> separately because probable cause to prosecute must be analyzed charge-by-charge and is subject to a "slightly higher" standard. *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013).

### 1. Probable Cause to Arrest

"An officer has probable cause to arrest when he or she

---

[10] For example, Plaintiff's state malicious prosecution claim (Claim One), federal malicious prosecution claim (Claim Two), state false arrest claim (Claim Eight), federal false arrest claim (Claim Nine), and state false imprisonment claim (Claim Ten) are all predicated on the absence of probable cause.

has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed a crime."[11]  *Id.* at 89 (citation modified).  "A court must consider only those facts available to the officer at the time of the arrest and immediately before it."[12]  *Id.* (citation modified).

The undisputed video evidence from BWC establishes that, upon arrival at the scene, defendant Sgt. Falzarano and non-party Ofc. Kevin Padilla engaged in an appropriate investigation of the alleged trespass before determining that they had probable cause to arrest Plaintiff.  The officers spoke with the complaining witness, Alysa Andrade, and then spoke with the Intorcias who walked up to the officers on the sidewalk.  Alysa Andrade told officers that she (Alysa Andrade) said to Plaintiff, while Plaintiff was on Alysa Andrade's property, to "get out" and that, instead of complying, Plaintiff "gets in [Alysa Andrade's] face

---

[11] The relative seriousness of a criminal offense does not affect the analysis of probable cause to arrest.  *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.")

[12] Plaintiff goes to great lengths in attempting to trace back the subjective knowledge of various officers at various points in time, (*see* ECF No. 125 at 12-20), but such efforts are misplaced.  As the Supreme Court explained in *Nieves v. Bartlett*, "[a] particular officer's state of mind is simply irrelevant, and it provides no basis for invalidating an arrest."  587 U.S. 391, 403 (2019) (internal quotations omitted).  Also, "police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."  *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (citation omitted).  "They are also entitled to rely on the allegations of fellow police officers."  *Id.* (citation omitted).

17

and starts yelling" insults and threats. (Padilla BWC 8:06:20 to 8:06:30 PM.) During the officers' investigation, Ofc. Padilla asked Plaintiff, "Did you go to their yard?" (Padilla BWC 8:07:40 to 8:07:41 PM.) Plaintiff responded, "Yeah, I did." (Padilla BWC 8:07:41 to 8:07:42 PM.) Ofc. Padilla then asked Plaintiff, "Were you allowed to go their yard?" (Padilla BWC 8:07:43 to 8:07:45 PM.) Plaintiff shook her head and responded, "No." (Padilla BWC 8:07:45 PM.) Later, Alysa Andrade reiterated to the officers, "I asked [Ms. Intorcia] to leave while [Ms. Intorcia] was still on my property. She did not leave." (Padilla BWC 8:09:48 to 8:09:52 PM.) Alysa Andrade's allegations, coupled with Plaintiff's own admission (i.e. knowing that she was not allowed on Alysa Andrade's yard but that she went anyway), were sufficient to establish probable cause as to each element of criminal trespass under N.Y. Penal Law § 140.05. "[T]o establish probable cause for arresting [Plaintiff] for criminal trespass, Defendants must show that (1) there was a lawful order excluding Plaintiff from the property; (2) that the order was communicated to him by a person with authority to give the order; and (3) that Plaintiff defied the order." *Yorzinski v. City of New York*, 175 F. Supp. 3d 69, 77 (S.D.N.Y. 2016). In sum, officers had probable cause to arrest Plaintiff based on their investigation, which showed that Plaintiff defied Alysa Andrade's order to leave her yard and

therefore committed a N.Y. Penal Law § 140.05 offense.[13]

### 2.  Probable Cause to Prosecute

As noted earlier, "[t]he probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury*, 721 F.3d at 95.  "Probable cause, in the context of malicious prosecution, has ... been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Id.* (internal quotations omitted).  In contrast to the analysis of probable cause to <u>arrest</u>, probable cause to <u>prosecute</u> must be evaluated "charge by charge" such that "a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge." *Chiaverini v. City of Napoleon,*

---

[13] One of the four criminal offenses for which Plaintiff was arrested was disorderly conduct in violation of N.Y. Penal Law §240.20(6).  (ECF No. 123-1 at 4.)  This may have been a mistake or clerical error because officers lacked probable cause to arrest Plaintiff for an offense under this particular subsection (§240.20(6)) but arguably had probable cause under different subsections of the disorderly conduct statute.  Under N.Y. Penal Law §240.20(6), "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  There is no evidence that Plaintiff congregated in a public place or defied a police order to disperse.

This error does not give rise to a false arrest claim because "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and ... it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006).  "Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest,* and not on the validity of each charge." *Id.* (emphasis in original).

This error also does not give rise to a malicious prosecution claim because Plaintiff was <u>not</u> charged with disorderly conduct in violation of N.Y. Penal Law §240.20(6).  (ECF No. 123-5 at 9.)

*Ohio*, 602 U.S. 556, 562 (2024).  Although Plaintiff was arrested on four charges, she was ultimately charged with only two trespass-related offenses: (i) trespass in violation of N.Y. Penal Law §140.05, and (ii) criminal trespass in the third degree in violation of N.Y. Penal Law §140.10(A).  (ECF No. 123-5 at 9.) Each is analyzed in turn.

### a.    Trespass (N.Y. Penal Law § 140.05)

*First*, as discussed at length above in Part I.A.1, officers had probable cause to arrest Plaintiff for criminal trespass under § 140.05.  Their investigation also provided adequate probable cause under the "slightly higher" standard for probable cause to prosecute. *Stansbury*, 721 F.3d at 95.  Alysa Andrade's statements and the admissions of both Plaintiff and her husband, Mr. Intorcia, were more than sufficient to establish probable cause to prosecute Plaintiff because a reasonable person would conclude Plaintiff entered Alysa Andrade's property and remained after being ordered to leave.

### b.    Criminal Trespass in the Third Degree (N.Y. Penal Law §140.10(A))

*Second*, Plaintiff was charged under N.Y. Penal Law §140.10(A), which provides that "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property ... which is fenced or otherwise enclosed in a manner designed to

exclude intruders."  The Court incorporates here its preceding §
140.05 analysis in Section I.A.2.a. to find that Plaintiff
"knowingly ... remain[ed] unlawfully ... upon real property."  The
only element distinguishing § 140.10(A) from § 140.05 is the
fencing element – that is, whether the property at issue was
"fenced or otherwise enclosed in a manner designed to exclude
intruders."[14]  This element is satisfied because, as officers
approached the property, the fencing around Alysa Andrade's yard
was visible.  (*See* Padilla BWC 8:05:04 to 8:05:08 PM.)  In speaking
with the responding officers, Plaintiff attempts to excuse her
conduct by claiming that "the gate was open." (Padilla BWC 8:07:02
to 8:07:32 PM.)  Even if the Court were to credit Plaintiff's claim
that there was an open gate on the fence surrounding Alysa
Andrade's yard, an open gate in a residential yard would not render
the property unfenced.  Moreover, Plaintiff presents no evidence
and no argument that Alysa Andrade's yard was not "fenced" under
N.Y. Penal Law § 140.10(A).  The Court therefore finds that
probable cause existed to prosecute Plaintiff for "knowingly ...
remain[ing] unlawfully ... upon real property ... which is fenced"
– that is, Plaintiff's refusal to leave Alysa Andrade's fenced
yard after she was ordered to leave.

---

[14] A N.Y. Penal Law § 140.05 offense is a lesser-included offense of N.Y. Penal Law § 140.10(A).  *See Yorzinski v. City of New York*, 175 F. Supp. 3d 69, 76-77 (S.D.N.Y. 2016).

21

**B.    Probable Cause Defeats False Arrest, False Imprisonment, and Malicious Prosecution Claims (Claims One, Two, Eight, Nine, and Ten)**

As discussed below, the existence of probable cause to arrest and prosecute Plaintiff warrants summary judgment in favor of Defendants on five claims predicated on the absence of probable cause.

**1.    False Arrest and False Imprisonment**

Probable cause to <u>arrest</u> Plaintiff defeats Plaintiff's state false arrest claim (Claim Eight), federal false arrest claim (Claim Nine), and state false imprisonment claim (Claim Ten). *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) ("Probable cause is a complete defense to an action for false arrest brought under New York law or § 1983.") (internal quotations omitted); *see also Martinez v. City of Schenectady*, 761 N.E.2d 560, 564 (2001) ("The existence of probable cause serves as a legal justification for the arrest and an affirmative defense to the [false imprisonment] claim.")  The City of New York is not liable for Claims Eight and Ten under a vicarious liability theory because, "when there is no underlying liability, there can be no vicarious liability." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 112 (2d Cir. 2022).  The Court therefore GRANTS Defendants summary judgment as to Claims Eight, Nine, and Ten.

**2.    Malicious Prosecution**

Probable cause to <u>prosecute</u> Plaintiff defeats

Plaintiff's state malicious prosecution claim (Claim One), and federal malicious prosecution claim (Claim Two). *See Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) ("In order to prevail on ... a [malicious prosecution] claim under both Section 1983 and New York State law, a plaintiff is required to demonstrate," *inter alia*, "that there was no probable cause for the proceeding.") (internal quotations omitted).  The Court finds that there was probable cause to prosecute Plaintiff and that she has not presented any evidence upon which a reasonable jury could find for Plaintiff on Claims One and Two.  Therefore, the Court GRANTS Defendants summary judgment as to Claims One and Two.

## II.  Abuse of Process Claims (Claims Five and Six)

Although, as discussed below, the elements of claims for federal and state abuse of process (also termed "malicious abuse of process"[15]) are unclear as to probable cause, the Second Circuit has previously held that "[i]n New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse [or] justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"  *Savino*, 331 F.3d at 76 (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

---

[15] Courts use the terms "abuse of process" and "malicious abuse of process" interchangeably to refer to the same claim.  *See Savino v. City of New York*, 331 F.3d 63, 76-78 (2d Cir. 2003).

**A.    Probable Cause**

As the Second Circuit acknowledged in 2015, "[t]here has been considerable confusion within our Circuit regarding whether probable cause is a complete defense to a claim of abuse of process under New York law." *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 958 (2d Cir. 2015). After a decade of "considerable confusion" on this issue, the Second Circuit has not issued a precedential opinion as to whether probable cause defeats an abuse of process claim. Instead, the Second Circuit has held that, for abuse of process claims where probable cause exists, the "very existence" of "this confusion" in the law "establishes that [the defendant] is entitled to qualified immunity." *Id.* at 959. Since *Mangino*, the lingering uncertainty over the past decade has resulted in courts routinely granting officers qualified immunity on the basis of "confusion" rather than a legal finding that probable cause is a complete defense to abuse of process claims. *See, e.g.*, *Pulk v. Winter*, 722 F. App'x 36, 39 (2d Cir. 2018) (summary order) (granting qualified immunity due to the "considerable confusion" discussed in *Mangino*); *DuBois v. Cunningham*, No. 21-923, 2022 WL 2186956, at *3 (2d Cir. June 17, 2022) (summary order) (same).

The *Mangino* panel recognized that, in the absence of controlling authority from the Second Circuit, "numerous district courts within our Circuit" and at least one Second Circuit panel

(in a nonprecedential summary order) held that "probable cause <u>is</u> a complete defense to an abuse-of-process claim under New York law." 808 F.3d at 958 (collecting cases) (emphasis added). But, given that the *Mangino* panel left the question unanswered, some district courts have since adopted the opposite view – that probable cause is <u>not</u> a complete defense to abuse of process claims. *See Carwell v. City of New York*, No. 21-CV-480 (VEC), 2023 WL 419182, at *4 (S.D.N.Y. Jan. 26, 2023) (collecting cases).

In the face of at least a decade of uncertainty throughout the Circuit on this important constitutional question, this Court finds it prudent at this juncture to undertake a fresh, exhaustive review of the relevant controlling case law. Upon doing so, this Court finds on-point Supreme Court authority that offers a clear answer. Across majority opinions, concurrences, and dissents over decades, the Supreme Court has uniformly taken the position that an abuse of process claim is <u>not</u> predicated on an absence of probable cause or "the wrongfulness of the prosecution, but [rather] some extortionate perversion of lawfully initiated process to illegitimate ends." *Heck v. Humphrey*, 512 U.S. 477, 486 n.5 (1994); *Hartman v. Moore*, 547 U.S. 250, 258 (2006) (discussing "whether the closer common-law analog to retaliatory prosecution is malicious prosecution (<u>with its no-probable-cause element</u>) or <u>abuse of process</u> (<u>without it</u>)") (emphasis added); *Heck*, at 495 (Souter, J., concurring) (four-Justice concurrence citing

to Restatement (Second) of Torts § 682, Illustration 1 (1977) for the proposition that liability for abuse of process could be established "regardless of ... want of probable cause"); *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 74 (1993) (Stevens, J., concurring) ("The existence of a tort of abuse of process shows that it has long been thought that litigation could be used for improper purposes even when there is probable cause for the litigation."); *Gonzalez v. Trevino*, 602 U.S. 653, 670 (2024) (Alito, J., concurring) ("the common-law tort of abuse of process ... lacks a no-probable-cause requirement"); *Gonzalez*, 602 U.S. at 677 (2024) (Thomas, J., dissenting) ("an abuse-of-process claim did not require a plaintiff to establish the absence of probable cause") (citing C. Addison, Wrongs and Their Remedies 601–602 (3d ed. 1870); T. Cooley, Law of Torts 356 (3d ed. 1906)).

Another notable analytical issue is that, although the Second Circuit held in *Mangino* that "[w]hen a plaintiff asserts an abuse-of-process claim under Section 1983, we turn to state law to find the elements," 808 F.3d 951, 958 n.5 (internal quotations omitted), the Supreme Court more recently held that courts should employ a more demanding (and research-intensive) approach to identify the correct elements: "To determine the elements of a constitutional claim under § 1983, this Court's practice is to first look to the elements of the most analogous tort <u>as of 1871</u>

when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue." *Thompson v. Clark*, 596 U.S. 36, 43 (2022) (internal quotations omitted) (emphasis added).

After conducting the *Thompson* analysis and reviewing case law that sheds light on how courts analyzed abuse of process torts in the late 1800s, this Court finds further support for the view that probable cause does not defeat an abuse of process claim. In an 1898 case, *Whitten v. Bennett*, the Second Circuit held, in relevant part, that "[t]here is a class of cases in which a party who has been injured by the use of legal process which is neither void nor invalid has a remedy by action upon the case, sometimes termed an action for abuse of process."  86 F. 405, 406 (2d Cir. 1898) (internal quotations omitted).  In contrast, "[t]he burden of showing want of probable cause is upon the plaintiff in an action for malicious prosecution."  *Marks v. Townsend*, 97 N.Y. 590, 590 (1885).

Moreover, a review of pre-1871 case law establishes that the distinction between malicious prosecution (which is defeated by probable cause) and abuse of process (which is not) was well-settled by 1871.  For example, in an 1837 case, *Baldwin v. Weed*, the Supreme Court of Judicature of New York[16] noted that, though

---

[16] As explained by the Historical Society of the New York Courts, the Supreme Court of Judicature of New York was the highest New York state court with jurisdiction in law, prior to the merger of law and equity jurisdiction:

plaintiff's malicious prosecution claim was defeated by probable cause,[17] the plaintiff's complaint "should have contained a count for the abuse of the process, and which would have reached this particular objectionable conduct of the defendant, so highly outrageous and indefensible." 17 Wend. 224, 233-34, 1837 WL 2761, at *7 (N.Y. Sup. Ct. 1837).

Bound by controlling Supreme Court authority and informed by the analytical approach in *Thompson* (i.e. ascertaining the elements of abuse of process as understood in 1871), this Court finds that probable cause is <u>not</u> a complete defense to abuse of process.

## B. Federal Qualified Immunity Applicable to Federal Abuse of Process Claim (Claim Six)

Notwithstanding the Court's preceding finding that probable cause is not a complete defense to abuse of process, this

---

By Chapter 4 of the Laws of 1691, the New York Assembly established the New York Supreme Court of Judicature with the same common law jurisdiction as the English Courts of King's Bench, Common Pleas and Exchequer. The court did not have jurisdiction in equity — that jurisdiction was vested in the Court of Chancery. The Supreme Court of Judicature was continued under the 1777 Constitution. Under the 1846 Constitution, the equity jurisdiction of the Court of Chancery became vested in the New York Supreme Court, which from then on possessed general common law and equity jurisdiction.

*See* Historical Society of the New York Courts, *New York State Supreme Court*, https://perma.cc/6BWG-KEMB (accessed November 23, 2025).

[17] "In an action for *malicious prosecution* for procuring the indictment of the plaintiff for obtaining goods by false pretences, evidence that the plaintiff had been guilty of conduct ... is sufficient to warrant a verdict for the defendant on the ground of the existence of *probable cause* for criminal prosecution." *Baldwin v. Weed*, 17 Wend. 224, 1837 WL 2761, at *1 (N.Y. Sup. Ct. 1837) (emphasis in original).

Court is bound by the Second Circuit's finding in *Mangino* that, when probable cause exists, defendants are entitled to qualified immunity on federal abuse of process claims because "officers of reasonable competence," and even "federal judges," "could disagree" (and, in fact, <u>do</u> disagree) "on the issue."  808 F.3d at 959.  *See Pulk*, 722 F. App'x at 39 (granting qualified immunity due to the "considerable confusion" discussed in *Mangino*); *DuBois*, 2022 WL 2186956, at *3 (same).  Because Defendants are entitled to federal qualified immunity, the Court GRANTS Defendants summary judgment on Plaintiff's federal abuse of process claim (Claim Six).

**C.    State Abuse of Process Claim (Claim Five)**

Plaintiff's state abuse of process claim is analyzed under state law, and the Court must consider qualified immunity under state law rather than federal law.  *See Triolo*, 24 F.4th at 108–09 (distinguishing between federal and state qualified immunity); *see also Napolitano v. Flynn*, 949 F.2d 617, 621 (2d Cir. 1991) ("the substantive law of [the state] governs the applicability of qualified immunity to [plaintiff]'s state law claims").

**1.    Lack of Clarity Under State Law**

As a threshold matter, at least some of the confusion about the elements of <u>federal</u> abuse of process claims also appears to exist as to the elements of <u>state</u> abuse of process claims.  In *Shields v. City of New York*, the First Department held that

29

probable cause is not, by itself, a complete defense to a state abuse of process claim – but rather must be accompanied by the absence of a "collateral objective." 35 N.Y.S.3d 330, 331 (1st Dep't 2016) ("*Since plaintiffs point to no evidence that defendants were motivated by some collateral objective*, the existence of probable cause likewise constitutes a defense to plaintiffs' cause of action for abuse of process") (citations omitted) (emphasis added). The Second Department, however, previously held that "justification" (i.e. probable cause) could negate an element of abuse of process. *See Hornstein v. Wolf*, 491 N.Y.S.2d 183, 187 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 721 (1986) ("There are three essential elements to the cause of action [for abuse of process]: (1) regularly issued process compelling the performance or forbearance of some prescribed act; (2) the person activating the process must have been motivated to do harm without economic or social excuse or *justification*; and (3) the person activating the process must be seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process.") (citations omitted) (emphasis added). Therefore, there exists at least some conflict in state law on this issue.[18]

_____

[18] Historically, New York courts found that probable cause does <u>not</u> defeat state abuse of process claims. For example, in a 1903 case, *Paul v. Fargo*, the Fourth Department quoted Hale on Torts for the proposition that the absence of probable cause is not an element of malicious abuse of process:

> Malicious abuse of process is distinguished from malicious prosecution in at least two respects: First, in that <u>want of probable cause is not an essential element</u>; and, second, that it is not essential that the original

## 2. State Qualified Immunity

"New York law grants government officials qualified immunity on state law claims ... if their actions entail making decisions of a judicial nature, unless there is bad faith or the action taken is without a reasonable basis." *Triolo*, 24 F.4th at 108 (internal quotations omitted). "In contrast to the federal standard, which is objectively reasonable reliance on existing law, the New York standard for entitlement to qualified immunity has both objective and subjective components." *Lore v. City of Syracuse*, 670 F.3d 127, 166 (2d Cir. 2012) (internal quotations omitted). "The subjective component makes qualified immunity entirely unavailable if there are undisturbed findings of bad faith." *Id.* (internal quotations omitted).

The Court finds (i) that the lingering confusion identified in *Mangino* exists as to state abuse of process claims

---

proceeding shall have terminated.

82 N.Y.S. 369, 373 (4th Dep't 1903) (emphasis added). In 1968, the Second Department quoted Law of Torts by Harper and James to explain the "often overlooked" "distinction between abuse of process and malicious prosecution":

A wrong usually referred to as "malicious abuse of process" is committed when the actor employs legal process in a manner technically correct, but for a wrongful and malicious purpose to attain an unjustifiable end or an object which it was not the purpose of the particular process employed to effect. It differs from malicious prosecution in that it is not necessary to show that the action in which the process was used was without probable cause or that it terminated favorably to the plaintiff. The action is not for the wrongful bringing of an action or prosecution, but for the improper use, or rather "abuse," of process in connection therewith.

*Pagliarulo v. Pagliarulo*, 293 N.Y.S.2d 13, 14 (2d Dep't 1968) (citation modified).

as well, (*see supra* Section II.C.2), (ii) that officers' probable cause determination constitutes a "decision[] of a judicial nature," *Triolo*, 24 F.4th at 108, and (iii) that Plaintiff has not adduced any non-speculative evidence suggesting bad faith on the part of the officers involved in Plaintiff's arrest and prosecution. *See Hicks*, 593 F.3d at 166 ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.") (citation modified). Even if, *arguendo*, Plaintiff was, as she claims, subjected to an invasive cavity search by Ofc. Caldararo, Plaintiff has offered no non-speculative evidence that such invasive cavity search was the product of bad faith police conduct. Accordingly, the individual officer defendants are entitled to state qualified immunity, and the Court GRANTS the individual officer defendants summary judgment on Plaintiff's state abuse of process claim (Claim Five).

### 3. Plaintiff's State Abuse of Process Claim Against the City of New York

Although state qualified immunity bars Plaintiff's state abuse of process claim (Claim Five) against the individual officer defendants, qualified immunity is only "an individual affirmative defense" and "does not protect municipalities." *Triolo*, 24 F.4th at 110. "[U]nder New York law and basic agency principles, a municipal employer is vicariously liable for the wrongs of its employee, even when the employee is individually immune, so long

as the wrong was committed within the scope of employment." *Id*. Regardless of whether probable cause is a complete defense to state abuse of process claims, the Court finds that Plaintiff has offered no non-speculative evidence for a critical element of the claim – specifically, that officers were "seeking some collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of process." *Hornstein*, 491 N.Y.S.2d at 187, *aff'd*, 67 N.Y.2d 721. As discussed at length in Part III of this section, *see infra*, Plaintiff's allegations that officers had improper motives are predicated on "mere speculation or conjecture as to the true nature of the facts," which cannot "overcome a motion for summary judgment." *Hicks*, 593 F.3d at 166. Because Plaintiff cannot establish that officers had improper motives for Plaintiff's arrest and prosecution, the City of New York cannot be held liable on a theory of vicarious liability. *See Triolo*, 24 F.4th at 112 (holding that, "when there is no underlying liability, there can be no vicarious liability"). Accordingly, the Court GRANTS defendant City of New York summary judgment on Plaintiff's state abuse of process claim (Claim Five).

**III. Plaintiff's Claims of Civil Conspiracy, Evidence Fabrication, Failure to Intervene, and Negligent Hiring, Training, and Supervision (Claims Three, Four, Seven, and Fifteen) are Predicated on Impermissible Speculation and are Unsupported by Evidence Creating a Factual Dispute From Which a Jury Could Find for Plaintiff**

As previously discussed, the Second Circuit has held

33

that "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks*, 593 F.3d at 166; *see also Kemp*, 117 F.4th at 68 ("Generally, speculation by the party resisting the motion will not defeat summary judgment.") (internal quotations omitted). Most of Plaintiff's claims rely wholly on unsupported inferences and assumptions that are impermissible under controlling Second Circuit precedent.[19] As discussed below, Plaintiff fails to adduce non-speculative evidence in support of elements required to establish claims of civil conspiracy (Claim Seven), evidence fabrication (Claim Three), failure to intervene (Claim Four), and negligent hiring, training, and supervision (Claim Fifteen). Each

---

[19] Although the Court will discuss the speculative nature of Plaintiff's allegations in its claim-by-claim analysis, the Court notes at the outset certain general principles that apply across Plaintiff's claims: There is nothing improper about a crime victim, whether related to police officers or not, calling 911 about a trespassing neighbor and to also call her parents to discuss what happened. A crime victim's status as a relative of law enforcement officers does not give rise to any inference of impropriety. Similarly, a conversation about an offense with a family member who is a law enforcement officer is not inherently improper. Furthermore, there is nothing inherently improper about officers pursuing criminal charges that are supported by probable cause, even low-level charges, in which the victim is a relative of a law enforcement officer and where the law enforcement officer relative is aware of the ongoing investigation and prosecution of the crime. Throughout her opposition brief, Plaintiff invites the Court to put on conspiratorial glasses to speculate as to how neutral facts about a relatively mundane trespass arrest can, in fact, be evidence of a multi-precinct NYPD conspiracy to punish Plaintiff for complaining about construction noise. Plaintiff argues that "[i]t would not be difficult for a jury to find that the Defendants having an additional arrest under their belt (especially the arrest of someone who allegedly trespassed onto the daughter of an NYPD captain's property), <u>might</u> make them look like the hero at work and garner brownie points with their supervisors." (ECF No. 125 at 29) (emphasis added). Plaintiff's use of the word "might" reveals the purely speculative nature of these allegations. Pursuant to *Hicks* and *Kemp*, the Court cannot entertain such speculation on a motion for summary judgment.

34

is analyzed in turn.

   **A.    Civil Conspiracy (Claim Seven)**

        "To prove a § 1983 conspiracy, a plaintiff must show:
(1) an agreement between two or more state actors or between a
state actor and a private entity; (2) to act in concert to inflict
an unconstitutional injury; and (3) an overt act done in
furtherance of that goal causing damages." *Pangburn v. Culbertson*,
200 F.3d 65, 72 (2d Cir. 1999).   "[U]nder the intracorporate
conspiracy doctrine, the officers, agents, and employees of a
single corporate entity," including a municipality, "are legally
incapable of conspiring together." *Murphy v. City of Stamford*,
634 F. App'x 804, 805 (2d Cir. 2015) (summary order) (internal
quotations omitted).   Applied to the facts of this case, members
of the NYPD cannot, under Section 1983, conspire together because
they are agents of the same entity.   "[A]n exception to the
intracorporate conspiracy doctrine allows suits against
individuals within a single entity when they are pursuing personal
interests wholly separate and apart from the entity." *Ruggiero v.
Cnty. of Orange*, No. 20-CV-7693 (AEK), 2023 WL 7005074, at *14
(S.D.N.Y. Oct. 24, 2023) (citation modified).   Thus, Plaintiff
must present non-speculative evidence to create an issue of fact
that either (i) Alysa Andrade agreed with one or more NYPD officers
"to act in concert to inflict an unconstitutional injury" on
Plaintiff, *Pangburn*, 200 F.3d at 72, or (ii) multiple NYPD officers

35

agreed among themselves to unconstitutionally injure Plaintiff for "personal interests wholly separate and apart from the [NYPD]," *Ruggiero*, 2023 WL 7005074, at *14.

The only possibly unconstitutional police conduct in this action was Ofc. Caldararo's alleged cavity search. Plaintiff has not identified any non-speculative evidence that Ofc. Caldararo agreed with Alysa Andrade or other officers to conduct an invasive cavity search of Plaintiff. Plaintiff's arguments otherwise are farfetched and sometimes nonsensical. For example, Plaintiff claims that defendants Campanella, Stam, and Ng "took overt acts to cover up Plaintiff's unlawful cavity search." (ECF No. 125 at 46.) Without specifying any such overt acts, Plaintiff instead points to, *inter alia*, certain officers' career advancement to deduce, out of whole cloth, the existence of a cover-up:

> Campanella admitted that he "could not wait" to get transferred from the 122nd Precinct, and he in fact *did* get transferred following Plaintiff's arrest. (LCDT 10-13 (JDA 6)). Ng was interviewed to become a detective following Plaintiff's arrest, and sought Campanella's assistance in attempts to secure the promotion. (LCDT 201 (JDA 6)). Stam testified that he has only been a police officer three and a half years and this is the first time he has ever been sued. (RSDT 9-10 (JDA 4)). Accordingly, a jury could reasonably find that the Defendants conspired to cover-up Plaintiff's unlawful cavity search to avoid discipline and advance their careers.

(*Id.*) In evaluating the viability of claims on summary judgment, the Court cannot rely on such bald speculation. Accordingly, the

Court GRANTS Defendants summary judgment on Claim Seven (federal civil conspiracy claim).

### B.    Evidence Fabrication (Claim Three)

"To succeed on a fabricated-evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (citation modified).  A critical element of this claim is the likelihood that any purportedly fabricated evidence would influence a jury's verdict.  Plaintiff's evidence fabrication claim makes no serious attempt to establish this element. Plaintiff does not allege evidence fabrication that could plausibly influence a jury's verdict as to Plaintiff's criminal trespass offenses.  Rather than address the seemingly conclusive evidence of Plaintiff's guilt for the charged trespass offenses (including Alysa Andrade's allegations and Plaintiff's own admissions captured on video), Plaintiff's opposition brief advances a tangential argument that the purported cavity search at the precinct would (somehow) persuade a jury that Plaintiff did not trespass on Alysa Andrade's property:

> Had the DA known that this cavity search occurred, a
> reasonable jury could find that the DA would not have
> even prosecuted Plaintiff in the first place, and it

> surely would have influenced a jury's decision. This is so because all Defendants' credibility would be irreparably tainted if a jury became aware that a suspicionless cavity search was conducted for such low-level charges, which in turn weakens any case the prosecution may have had against Plaintiff.

(ECF No. 125 at 30.)  Plaintiff presents no explanation other than her ipse dixit for why a cavity search would "irreparably taint[]" "all Defendants' credibility" such that a jury would ignore the elements of Plaintiff's trespass charges and instead render a verdict based on the type of post-arrest search Plaintiff purportedly received.  Accordingly, the Court GRANTS Defendants summary judgment on Claim Three (federal evidence fabrication claim).

### C.  Failure to Intervene (Claim Four)

"[A]ll law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Buari v. City of New York*, 530 F. Supp. 3d 356, 391–92 (S.D.N.Y. 2021) (quoting *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)).  "Liability attaches on the theory that the officer, by failing to intervene, becomes a tacit collaborator in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (internal quotations omitted).  "A police officer can be liable for failure to intercede when (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a

reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Buari*, at 392.

Plaintiff's failure to intervene claim again relies on speculation. Given that Officers Ng and Stam were males, they were not present inside the bathroom where a female officer (Ofc. Caldararo) was searching Plaintiff. Therefore, Plaintiff's claim that Officers Ng and Stam failed to intervene (to prevent the purported cavity search) must be premised on Officers Ng and Stam having advance knowledge of the specific type of search Ofc. Caldararo would allegedly conduct in the bathroom. Plaintiff offers no evidence in the record that Officers Ng and Stam – or any other officer – had any advance knowledge of the type of search Ofc. Caldararo would conduct. The only circumstantial evidence that Plaintiff adduces is Ofc. Caldararo's decision to remove her bodyworn camera and place it on a table outside the bathroom. (Caldararo BWC 8:49 PM.) Ofc. Caldararo did not turn off the bodyworn camera, and the camera continued to record video before, during, and after the search. (*Id.*) Ofc. Caldararo's removal of her bodyworn camera for the search in the bathroom was not, on its own, enough to put Officers Ng and Stam (or any reasonable officers in their position) on notice that Ofc. Caldararo was about to (purportedly) insert her finger in Plaintiff's rectum, as alleged.

(Am. Complaint ¶ 45.)  Further, given that the adjacent holding cell was occupied by a male inmate and that Plaintiff had accused the male inmate of "staring" at her, (Stam BWC 8:42:53 to 8:42:55 PM), the bathroom was a reasonable location for a quick search of Plaintiff's person.[20]  In sum, Plaintiff has not presented evidence that can establish that other officers had advance notice of any planned unconstitutional conduct by Ofc. Caldararo.  Therefore, the Court GRANTS Defendants summary judgment on Plaintiff's failure to intervene claim (Claim Four).[21]

## D.  Negligent Hiring, Training, and Supervision (Claim Fifteen)

"In order to prevail on a negligence claim, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 490 (2016).  "In addition to the standard elements of negligence, a plaintiff alleging negligent hiring, retention, supervision, and direction must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity

---

[20] Sgt. Campanella testified that he directed Ofc. Caldararo to conduct a pat-down search of Plaintiff in the bathroom in the cell area.  (*See* Deposition of Louis Campanella, ECF No. 130-6 at 64.)

[21] Ofc. Caldararo cannot be held liable in a claim for failure to intervene predicated on her search of Plaintiff because, "[o]bviously, a person who is held liable under a theory of direct participation in the constitutional violation cannot also be held liable for a failure to intervene." *Rizk v. City of New York*, 462 F. Supp. 3d 203, 226 (E.D.N.Y. 2020) (citation omitted).

for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *PC-41 Doe v. Poly Prep Country Day Sch.*, 590 F. Supp. 3d 551, 566 (E.D.N.Y. 2021) (citation modified).

"Under New York law, a claim for negligent hiring or retention can only proceed against an employer for an employee acting outside the scope of her employment." *Peterec v. Hilliard*, No. 12-CV-3944 (CS), 2013 WL 5178328, at *13 (S.D.N.Y. Sept. 16, 2013) (internal quotations omitted). "If an employee is acting within the scope of her employment, the employer could only be liable, if at all, vicariously under the theory of *respondeat superior,* not for negligent supervision or retention." *Id.* (internal quotations omitted). "Under New York law, an employee acts within the scope of his employment when both (1) he is doing something in furtherance of the duties he owes to his employer, and (2) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities." *Hamm v. United States*, 483 F.3d 135, 138 (2d Cir. 2007).

Plaintiff's negligent hiring and training theory appears to be that the City of New York – specifically the NYPD – was negligent in hiring, training, and supervising the defendant officers. (ECF No. 125 at 47-51.) Consistent with the Court's findings earlier in this Memorandum and Order, the only potentially

41

unlawful conduct in this case is Ofc. Caldararo's purported cavity search of Plaintiff. Therefore, the Court will restrict its analysis of negligent hiring, training, and supervision to the purported cavity search.

Plaintiff's claim fails for two reasons: *First*, there is no non-speculative evidence presented that Ofc. Caldararo's bathroom search of Plaintiff at the precinct was outside the scope of her employment or conducted for any reason other than being directed by colleagues to do so. Ofc. Caldararo, who was not involved with the investigation of the offense or Plaintiff's arrest, was summoned by her male colleagues to conduct a search of Plaintiff, a female arrestee. Even if Plaintiff's allegations regarding Ofc. Caldararo's search in the bathroom are true (i.e. Ofc. Caldararo conducted an invasive cavity search of Plaintiff), the search – which occurred at the precinct at the direction of her colleagues – was within the scope of her employment. Moreover, Plaintiff alleges that "Sgt. Campanella <u>directed</u> Officer Caldararo [his subordinate] to conduct a cavity search of Plaintiff specifically inside of the bathroom in the cell area." (56.1 Counterstatement ¶ 70) (emphasis added). Under *Hamm*, "the employer" (NYPD, through Sgt. Campanella) was or could have been "exercising some control, directly or indirectly, over [Ofc. Caldararo]'s activities" when directing her to search Plaintiff in the bathroom. 483 F.3d at 138. Thus Ofc. Caldararo was acting

within, not outside, the scope of her employment.

*Second*, there is insufficient similarity between an alleged unconstitutional cavity search and the types of misconduct Plaintiff identifies in Ofc. Caldararo's history to place her employer, the NYPD, on notice that Ofc. Caldararo had a "propensity" for unconstitutional searches. *PC-41 Doe*, 590 F. Supp. 3d at 566. Plaintiff points to various unrelated alleged misconduct: "failing to activate her BWC during a mandatory event," (ECF No. 125 at 48), "threatening to use physical force against an emotionally disturbed person," (*id.* at 49), "incomplete/improper memobook entries," (*id.*), and "threatening to issue a summons ... without justification," (*id.*). None of these allegations relate to searches, much less cavity searches of a person. Accordingly, defendant City of New York did not have notice of Ofc. Caldararo's alleged propensity for unconstitutional searches. The Court GRANTS summary judgment in favor of defendant City of New York on Plaintiff's claim of negligent hiring, training, and supervision (Claim Fifteen).

## IV. Genuine Issue of Material Fact as to Whether Ofc. Caldararo Inserted Her Finger Into Plaintiff's Rectum

There is a genuine issue of material fact as to whether Ofc. Caldararo inserted her finger into Plaintiff's rectum during the 42-second search of Plaintiff in the precinct bathroom between approximately 8:49:04 and 8:49:46 PM. (*See* Caldararo BWC 8:49:04

to 8:49:46 PM.)  Plaintiff claims that Ofc. Caldararo did so.  (*See* Deposition of Deborah Intorcia, ECF No. 130-11 at 21.)  Ofc. Caldararo denies doing so.  (*See* ECF No. 41, Answer, ¶ 45.) Notably, Defendants have not moved for summary judgment on Plaintiff's unconstitutional search claim against Ofc. Caldararo. (ECF No. 121 at 12.)

Plaintiff asserts four claims premised on Ofc. Caldararo's conduct during the search of Plaintiff in the precinct bathroom: (i) federal unconstitutional search claim (Claim Eleven) against all defendants; (ii) federal excessive force claim (Claim Twelve) against all defendants; (iii) state assault and battery claim (Claim Thirteen) against Ofc. Caldararo and the City of New York; and (iv) state negligent infliction of emotional distress (NIED) claim (Claim Fourteen) against all defendants.  Although some of the claims asserted appear inconsistent, Federal Rule of Civil Procedure 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, *regardless of consistency*." (emphasis added).  The Second Circuit has emphasized that "[t]he flexibility afforded by Rule 8[] is especially appropriate in civil rights cases, in which complex inquiries into the parties' intent may sometimes justify raising multiple, inconsistent claims." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994).[22]

_____

[22] At the time *Henry* was published, the rule regarding inconsistent claims was located at Rule 8(e)(2), which "provide[d]: A party may set forth two or more statements of a claim or defense alternately or hypothetically, either in one

**A.** **Plaintiff's Federal Unconstitutional Search Claim (Claim Eleven), Federal Excessive Force Claim (Claim Twelve), State Assault and Battery Claim (Claim Thirteen), and State Negligent Infliction Of Emotional Distress (NIED) Claim (Claim Fourteen) Against Ofc. Caldararo Require a Factfinder to Determine Whether Ofc. Caldararo Inserted Her Finger Into Plaintiff's Rectum**

The common issue of material fact across all four aforementioned claims against Ofc. Caldararo – that is, Plaintiff's (i) federal unconstitutional search claim (Claim Eleven); (ii) federal excessive force claim (Claim Twelve); (iii) state assault and battery claim (Claim Thirteen); and (iv) state negligent infliction of emotional distress (NIED) claim (Claim Fourteen) – is whether Ofc. Caldararo inserted her finger into Plaintiff's rectum as part of the search in the precinct bathroom. This genuine issue of material fact precludes the Court from granting Ofc. Caldararo summary judgment as to these four claims.

**B.** **The City of New York is a Proper Defendant for Plaintiff's State Assault and Battery Claim (Claim Thirteen) and State Negligent Infliction Of Emotional Distress (NIED) Claim (Claim Fourteen) Under a Respondeat Superior Theory**

"Under the common-law doctrine of respondeat superior, an employer — including the State — may be held vicariously liable for torts, including intentional torts, committed by employees

---

count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds. All statements shall be made subject to the obligations set forth in Rule 11." *Henry*, 42 F.3d at 95 n.2.

acting within the scope of their employment." *Rivera v. State*, 142 N.E.3d 641, 645 (2019) (citations omitted). "[T]he employer may be liable when the employee acts negligently or intentionally, so long as the tortious conduct is <u>generally foreseeable</u> and a <u>natural incident of the employment</u>." *Id.* (citation omitted) (emphasis added). "Liability attaches for the tortious acts of employees only if those acts were committed in furtherance of the employer's business and within the scope of employment." *Id.* (citation modified). As previously discussed in Section III.D, the Court finds that Ofc. Caldararo was acting within the scope of her employment when searching Plaintiff. Accordingly, the City of New York <u>is</u> a proper defendant for Plaintiff's <u>state</u> assault and battery claim (Claim Thirteen) and <u>state</u> negligent infliction of emotional distress (NIED) claim (Claim Fourteen) under a respondeat superior theory.[23]

The City of New York <u>is not</u> a proper defendant, however, for Plaintiff's <u>federal</u> unconstitutional search claim (Claim

---

[23] Defendants cite to *Caravalho v. City of New York*, a case regarding the use of force applied to arrest "Occupy Wall Street" protesters in a public park, for the proposition that "a claim for NIED does not lie where the claim falls within the ambit of other traditional tort claims." (ECF No. 121 at 32 (citing *Caravalho v. City of New York*, No. 13-cv-4174 (PKC)(MHD), 2016 WL 1274575 (S.D.N.Y. Mar. 31, 2016)). Given the specific facts of *Caravalho* (accusations of officers arresting protesters in a physically rough manner or placing their handcuffs on too tight), the Court found "the only conduct at issue is [the officer]'s allegedly unreasonable use of force." *Caravalho*, 2016 WL 1274575 at *11-12, *23. The analytical distinction is clear. Intrusion of an officer's finger into arrestee's rectum is a far more severe invasion of privacy and far more susceptible to causing emotional distress than, for example, handcuffs being too tight.

Eleven) and <u>federal</u> excessive force claim (Claim Twelve). *See Brown*, 520 U.S. at 403 ("[A] plaintiff seeking to impose liability on a municipality under § 1983" must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

Therefore, the Court DENIES defendant City of New York summary judgment as to Plaintiff's <u>state</u> assault and battery claim (Claim Thirteen) and <u>state</u> negligent infliction of emotional distress (NIED) claim (Claim Fourteen). The Court GRANTS defendant City of New York summary judgment as to Plaintiff's <u>federal</u> unconstitutional search claim (Claim Eleven) and <u>federal</u> excessive force claim (Claim Twelve).

**C. Plaintiff's Federal Unconstitutional Search Claim (Claim Eleven), Federal Excessive Force Claim (Claim Twelve), and State Negligent Infliction of Emotional Distress (NIED) Claim (Claim Fourteen) Against the Remaining Officer Defendants Are Predicated on Impermissible Speculation**

As discussed at length earlier in this Memorandum and Order, Plaintiff's federal unconstitutional search claim (Claim Eleven), federal excessive force claim (Claim Twelve), and state negligent infliction of emotional distress (NIED) claim (Claim Fourteen) against the remaining individual officer defendants (officers other than Ofc. Caldararo) are predicated on, *inter alia*, speculation that other officers had advance notice of the type of search Ofc. Caldararo allegedly conducted. Plaintiff failed to point to any non-speculative evidence that could establish that

Ofc. Caldararo's colleagues knew in advance that she would conduct an unlawful type of search. As previously discussed, the Court is precluded from entertaining Plaintiff's speculative arguments. *See Hicks*, 593 F.3d at 166 ("A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."). Accordingly, the Court GRANTS Sgt. Acerra, Sgt. Campanella, Sgt. Falzarano, Ofc. Ng, and Ofc. Stam summary judgment on Claims Eleven, Twelve, and Fourteen.

## **CONCLUSION**

For the reasons explained at length in this Memorandum and Order, Plaintiff's surviving claims for trial are:

- **Claim Eleven** (federal unconstitutional search claim against defendant Caldararo)
- **Claim Twelve** (federal excessive force claim against defendant Caldararo)
- **Claim Thirteen** (state assault and battery claims against defendants Caldararo and City of New York)
- **Claim Fourteen** (state negligent infliction of emotional distress claim against defendants Caldararo and City of New York)

Defendants are GRANTED summary judgment on all other claims.[24]

Defendants' motion to bifurcate Claim Fifteen (state claim against the City of New York for negligent hiring, training, and supervision), (*see* ECF No. 121 at 37-41), is DENIED AS MOOT

---

[24] Any exhibits filed under seal that are specifically cited in this Memorandum and Order shall be unsealed. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006) (holding that "documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment").

because the Court grants summary judgment to the City of New York on Claim Fifteen.

The parties are respectfully directed to confer and comply with the Court's Pretrial Order dated August 25, 2025, as modified on November 26, 2025.  The parties are also encouraged to revisit settlement.

**So ordered.**

Dated:    December 8, 2025
          Brooklyn, New York                   _____
                                               **Kiyo A. Matsumoto**
                                               United States District Judge
                                               Eastern District of New York